GRANT, COLLECTOR, *v.* HARTFORD AND NEW HAVEN RAIL-
ROAD COMPANY.

The expression "profits used in construction" (within the meaning of the one
hundred and twenty-second section of the Internal Revenue Act of June 30,
1864, 13 Stat. 284) does not embrace earnings expended in repairs for keep-
ing the property up to its normal condition, but has reference to new construc-
tions adding to the permanent value of the capital; and when these are made
to take the place of prior structures, it includes only the increased value of the
new over the old, when in good repair.

ERROR to the Circuit Court of the United States for the
District of Connecticut.

This action was brought by the Hartford and New Haven
Railroad Company against Henry A. Grant, collector of inter-
nal revenue for the first district of Connecticut, to recover the
sum of $2,785.65 income tax, and $139.28 penalty, paid to him
under protest in January, 1868. The controversy arose upon
the question of the company's income for the two fiscal years
ending Aug. 31, 1867. During that period they expended from
their earnings $55,712.60, in constructing over the Farmington
River at Windsor a new stone bridge, to be used in place of a
wooden bridge which was deemed insecure; and they charged
the amount to current expenses. The assessor of internal
revenue for the district insisted that this sum should have
been charged to account of construction, and was fairly to be
regarded as "*profits used in construction,*" within the meaning
of the one hundred and twenty-second section of the act of
June 30, 1864; and, therefore, he made a special assessment of
the amount. The company having appealed to the commissioner
of internal revenue without effect, this action was brought.

A jury having been waived, the cause was tried by the court,
which found specially an agreed statement of facts. From
this it appears that the amount charged to current expenses
during each of the two years in question (including together
the said sum of $55,712.60) was not greater than the proper
ordinary current expenses and depreciation of the entire prop-
erty; and that the company returned the entire balance of
their gross earnings over and above said expenses, in the shape
of dividends and surplus, and paid the regular tax thereon.

Judgment having been rendered in favor of the company, the collector sued out this writ of error.

Argued by *Mr. Assistant Attorney-General Smith* for the plaintiff in error.

The " profit " of any business is the surplus remaining, after deducting from its gross receipts the necessary expenses of carrying it on, whether such surplus be retained in money or invested in addition to or improvement of the stock, or in other property.

The policy of Congress in the act which governs this case was to tax *all* gains and profits, whether divided or undivided. *Collector* v. *Hubbard,* 12 Wall. 17.

The stone bridge was an entirely new structure, a permanent improvement, for carrying on the business of the company. It was erected out of their profits, which were thus " used in construction," and not in repairs. Its total cost was properly assessed.

*Mr. R. D. Hubbard* for the defendant in error.

The profits of a railroad company cannot be claimed to be any thing more than the income remaining after satisfying a fair expense account.

The bridge was not intended to work an enlargement of the scope of the company's business. An unsafe structure was merely replaced by a better one.

The mere fact of its being more valuable adds nothing to the taxable or divisible profits of the company.

But the conceded facts render the preceding points wholly unnecessary.

The company charged no more for expenses and depreciation of their property in these two years than was " proper to cover such expenses and such depreciation."

The closest analogies to the question now under discussion have arisen under the construction of the English poor-law. By the Parochial Assessments Act (6 & 7 Will. IV. c. 96), rates for the relief of the poor in England and Wales are to be made upon an estimate of the *net annual value* of the several hereditaments rated thereunto, — that is to say, of the rent at which the same might reasonably be expected to let from year to year, — deducting therefrom the probable annual

average cost of the repairs, insurance, and other expenses
(if any) necessary to maintain them in a state to command
such rent.   Under this act the railway companies are charge-
able.   We submit that this law provides for no deduction which
an honest railway management ought not to make before count-
ing its profits.   In getting at the net annual value of the sev-
eral properties, the English courts hold, that a "percentage
on the gross receipts for annual depreciation of stock beyond
ordinary annual repairs," is to be made before coming at the
taxable income (*Reg.* v. *Grand Junction Ry. Co.*, 4 Ad. &
E. N. S. 18); that another deduction is to be made, of "an
annual sum per mile, for the renewal and reproduction of
the rails, sleepers," &c. (id.; *Reg.* v. *G. W. Ry. Co.*, 15 Q. B.
1085); and that the company is entitled to deduction of a
fair percentage for depreciation, reproduction, &c., although
the amount has not been actually expended (*Reg.* v. *Lond.,
Bright., & So. C. Ry. Co.*, and several other cases following,
reported in 15 Q. B. 313.)

MR. JUSTICE BRADLEY delivered the opinion of the court.

The company having returned the entire balance of their
gross earnings over and above current expenses, in the shape
of dividends and surplus, for the period in question, and paid
the regular tax thereon, we do not see why this was not a full
compliance with the law.   The object of the law was to im-
pose a tax on net income, or profits, only; and that cannot be
regarded as net income, or profits, which is required and ex-
pended to keep the property up in its usual condition proper
for operation.   Such expenditure is properly classed with
repairs, which are a part of the current expenses.   If a railroad
company should make a second track when they had but a
single track before, this would be a betterment or permanent
improvement, and, if paid out of the earnings, would be fairly
characterized as "profits used in construction."   The works of
the company would have an additional value to what they had
before, with an increased capacity for producing future profits.
This kind of expenditure is what Congress meant to reach,
when, in the one hundred and twenty-second section referred to,
it imposed a tax not only on the dividends of every railroad, canal,

and turnpike company, but also on "all profits of such company carried to the account of any fund, or used for construction."

The counsel for the government insists that this bridge was a betterment, because it was much more valuable than the old wooden bridge. But the assessor did not include the excess merely: he assessed the whole expenditure bestowed upon the new bridge, without making any allowance for the old one. His idea seems to have been, that all earnings used in new constructions are made taxable by the act, without reference to betterments, or to their being substituted for other constructions. Indeed, his assessment is not for "*profits* used in construction," but for "*earnings* used in constructing new Windsor Bridge, $55,712.60." In this view he was decidedly wrong. Earnings expended on a new structure may or may not be profits. Whether they are or not depends on other things to be taken into the account besides the mere fact of such expenditure. Had the assessment been merely for the increased value of the new bridge over the old one when in good repair, the case might have admitted of very different consideration.

*Judgment affirmed.*