Dayis, J.,
delivered “the opinion of the court:
At the trial the claimants withdrew all the allegations in their complaint and in their reguest for findings respecting transportation of goods and supplies for the Indians. They now claim only under their transportation contracts with the War Department.
In 1877 and 1878 they entered into contracts to carry passen- • gers and freight for the Quartermaster’s Department. They were the proprietors and operators of a railway from Duluth, on Lake Superior, to Bismarck, on the Upper Missouri. They agreed to take freight and passengers for the Quartermaster’s Department, and transport them from Saint Paul and from. Chicago, and from other points outside of the line of their own road, and to deliver them at Bismarck or other points on the line of their road at agreed rates. In order to do this they had to carry such freight and passengers over railroads that had been constructed in whole or in part, by the aid of a grant of public land, made upon condition that the road should be a public highway for the use of the Government of the United States, tree from all toll or other charge upon the transportation of any property or troops of the United States. The service was duly rendered according to the contract, and the vouchers therefor approved by the Quartermaster’s Department and audited at the Treasury. Fifty per cent, of the amount thus found due has been paid under the statute, and the claimants have been referred to this court for the remainder under the provision of the Act of 1875 (18 Stat. L., 453).
That act undoubtedly took away from the Quartermaster-General the power to make rates for transportation on such land-grant roads, and left us to determine the legal principles upon which to determine their settlement. We so held in the Atchison, Topeka and Santa Fé Eailroad Case, recently decided, *444 and fixed 50 per cent, of ordinary tariff rates for similar services as a fair compensation for government transportation. Tbe contracts would therefore have been regarded as made in violation of the statute, so far as they related to transportation over the land-grant roads, if they had been made with the companies owning the land-grant roads.
The language of the statute is, “ no money shall hereafter be paid to any railroad company for the transportation of any property or troops of the United States over any railroad which in whole or in part was constructed by the aid of a grant of public land on the condition that such railroad should be a public highway for the use of the Government of the United States, free from tolls or other charge, or upon any other conditions for the use of such road for such transportation, * * but nothing herein contained shall be construed as preventing any such railroad from bringing a suit in the Court of Claims for the charges for such tran spoliation.” In our opinion, Congress intended to refer all claims for government transportation over such roads to this court for adjudication. Whether it chose language broad enough to carry out its comprehensive policy we need not decide now. The claimants come directly within the literal words of the act. They are a railroad company, and they claim to have transported property and troops of the United States over such a railroad. The act does not require that the transportation should be made by the company owning the road.
So far as the Quartermaster assumed to make a contract for transportation over the land-grantroads outside ofthe claimants’ road, his act was absolutely void. It was still the duty of'the executive officers to send the claimants here for relief, and it was still our duty to ascertain and determine what was the ordinary tariff rate of the claimants for similar service, and to give them judgment for 50 per cent, of that sum, unless they had agreed to carry for less.
It is admitted that these contracts were made in good faith, and it is apparent that the parties in fixing the entire through rate took into consideration the discount on the transportation over the land-grant road. It might and probably would have been better if they had had the power to do this. But Congress has seen fit to confide that power to this court. There is enough in the record, however, to satisfy us that the amount allowed *445 to tbe land-grant roads gave them substantially what they would have received under the rule laid down by us in the Atchison, Topeka and Santa Fé Case, and we are not disposed to disturb the agreement of the parties for this small difference. Be minimis non curat lex.
The same maxim may be applied to the request of the Attorney-General to reopen the contract rates on the transportation over the claimants’ own road. That road was also a land-grant road, but with a different provision in its charter. The claimants received their grant upon condition that they should not u charge the government higher rates than they do individuals for like transportation and telegraph service.” It is conceded that the rates charged to the government are below the ordinary tariff rates. The Attorney-General, admitting that the, contract has in the main been carried out in good faith, shows that in some cases individual shippers have had better rates than those given to the government. He contends that the government is entitled to the lowest of those exceptional rates, but he admits that if we were to go into the voluminous testimony on this point, and if w'e were to make the calculations on the claimants’ tables, which might then become necessary, the difference in the main result would be small. When a contract is admitted to be made in good faith, to have been on the whole executed in good faith, to be in its terms and in its execution favorable to the government, we do not feel disposed to go into laborious examinations of evidence, to be followed by voluminous arithmetical calculations, unless some practical result is to follow. It seems to us to be eminently a case for the application of the maxim we have already quoted. We therefore decide nothing on this point, and hold ourselves entirely free, when it shall arise in a really important form, to dispose of it as may be consistent with our views of law and justice.
One further question remains, viz, whether the contract, being invalid in part, is void as an entirety. We think not. The invalidity of part of a contract, even by virtue of a statute, does not destroy the whole, if the remainder, being legal and distinct, is capable of separation from the illegal provision. (Chit. Con., 694.) The part which is void becomes so because it conflicts with a provision of law which takes away from the Quartermaster-General the right of fixing rates. It is not voided by any reason of general public policy, or because *446 of any immorality or surpitude in tbe contract, or from any similar cause wbicb vitiates a contract as an entirety. The government is not injured; on the contrary, it is benefited by permitting the remainder of the agreement to stand. Probably it would be still more benefited if the law would permit the whole to stand.
Judgment for the claimants for $21,051.65.
Drake, Oh. J., did not sit in this case, and took no part in its decision.