# HAWAIIAN COMMERCIAL AND SUGAR COMPANY, LIMITED *v.* TAX ASSESSOR AND COLLECTOR.

APPEAL FROM TAX APPEAL COURT, FIRST TAXATION DIVISION.

SUBMITTED JANUARY 5, 1903.          DECIDED FEBRUARY 19, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

The value of sugar mills, buildings and a plantation railroad discarded on account of the erection of larger mill at a different location and the construction of a different railroad connected therewith, is not a loss "actually sustained during the year incurred in trade, or arising from loss by fire not covered by insurance, or losses otherwise actually incurred," and cannot be deducted in computing the net income of the plantation subject to taxation under the Income Tax law of the Territory. (Act 20, Session Laws, 1901).

OPINION OF THE COURT BY GALBRAITH, J.

This is an appeal by the Tax Assessor of the 1st Taxation Division of the Territory from the decision of the Tax Appeal Court sustaining the contention of the Hawaiian Commercial and Sugar Company, Limited, a corporation, in making certain deductions from its gross income as "losses" incurred in business under the Territorial Income Tax law, Act 20, Session Laws, 1901, for the year preceding July 1st, 1902.

The return having been prepared in the principal office of the company at San Francisco, California, shows a gross income for the period of $1,821,022.48 and deduction of $1,830,075.43 and

loss of $9,052.95 and no taxable income for the year. Included in the amount deducted was $270,444.72 that the assessor claimed was not properly a "loss" and was subject to the tax under the law. This amount as found by the Tax Court and allowed to be deducted from the gross income as "losses otherwise actually incurred" was composed of three items:

"For loss on Old Mill and Mill Buildings........$150,749.52
"    "    "    "    Buildings . .................   10,000.00
"    "    "    "    Railroad property ...........  109,695.20
                                                  _____
                                                  $270,444.72

It appears that the Hawaiian Commercial and Sugar Company, Limited, is the owner and operator of an extensive sugar plantation located on the Island of Maui, in this Territory; that the plantation has been in successful operation since 1878 and is and has been fully equipped with sugar mill, plantation railroad and all the appliances necessary to the operation of such an estate; that in recent years, under the present management, the area of cultivated land has been extended and the output of the plantation greatly increased; that it was deemed necessary by the management to erect a new and larger mill at a more central location on the plantation and to construct a new railroad capable of sustaining increased traffic; that a new mill was erected at a different location and a new standard guage railroad was constructed—the old railroad being a narrow gauge was inadequate to meet the demands of transportation on the plantation; that the old mill and railroad were operated and in good condition until the new mill was started about January 29, 1902, and some of the machinery of the old mill, valued at about $90,000.00 was used in the equipment of the new and about $12,000.00 in addition was realized from the sale of other property from the old mill and about $15,000.00 dollars was realized from sale of railroad property; and all of the buildings of the old mill and the balance of the machinery of the mill and railroad is practically worthless, but it does not appear how long the mill building and railroad had been in use; that it would cost to equip a new mill and railroad such as that abandoned

something like $850,000.00 and that as is estimated very little more will be realized from the balance of this property and the Tax Court found that it is a loss as complete as "if it had been destroyed by fire" and that the loss was occasioned by "business necessity;" that it was business prudence and forethought that caused new improvements to be made to meet the increased production and that the loss occasioned by the necessity of abandoning a part of the old property was a "loss otherwise actually incurred" in connection with the business within the meaning of Section 4 of the Income Tax law and allowed the deduction as claimed.

The evidence clearly established the fact that these changes made on the plantation caused an abandonment of a great deal of property but the question presented by the appeal is, Was this a loss within the meaning of the Income Tax statute authorizing certain enumerated losses to be deducted?

Section 2 of the Act prescribes that "there shall be levied, assessed, collected and paid annually, except as hereinafter provided, a tax of *two per cent.* on the net profit or income above actual operating and business expenses, from all property owned, and every business, trade, employment or vocation carried on in the Territory of Hawaii, of all corporations doing business for profit in the Territory," etc.

Section 4 reads in part: "The net profits or income of all corporations shall include the amounts paid or payable to, or distributed or distributable among shareholders from any fund or account, or carried to the account of any fund or used for construction, enlargement of plants, or any other expenditure or investment paid from the net annual profits made or acquired by said corporation. In computing incomes, the necessary expenses actually incurred in carrying on any business, trade, profession or occupation or in managing any property, shall be deducted, and also all interest paid by such corporation on existing indebtedness.   *   *   *   also all losses actually sustained during the year incurred in trade or arising from losses by fire not covered by insurance, or losses otherwise actually incurred. Provided, that no deduction shall be made for any amount paid

for new buildings, permanent improvements or betterments made to increase the value of any property or estate."

The Tax Court relied on the case of *Grant v. Hartford & N. H. Ry. Co.*, 93 U. S. 225, in support of its judgment. In that case the question arose under the U. S. Income Tax Law of 1864. The assessor claimed that $55,712.60 used by the railroad company in the construction of a new stone bridge over a river to replace a cheap and unsafe wooden bridge was fairly to be regarded as "profits used in construction" within the meaning of section 122 of that statute and taxable as income. The court after stating that the company having returned their gross earnings over and above current expenses for the period and paid the tax thereon, had fully complied with the law, say "The object of the law was to impose a tax on net income, or profits, only; that that cannot be regarded as net income, or profits, which is required and expended to keep the property up in its usual condition proper for operation. Such expenditure is properly classed with repairs, which are a part of the current expenses. If a railroad company should make a second track where they had but a simple track before, this would be a betterment or permanent improvement, and, if paid for out of the earnings, would be fairly characterized as 'profits used in construction.' The works of the company would have an additional value to what they had before, with an increased capacity for producing future profits. This kind of expenditure is what Congress meant to reach." It is admitted that the new mill and railroad enhance the value of the plantation and increase its capacity for producing future profits. This admission brings the case squarely within the rule above announced and condemns the decision of the Tax Court. After the construction of the new mill and new railroad the company had two mills and two railroads. The fact that it had use for only the new mill and new railroad and voluntarily abandoned the old ones does not make the value or cost of replacing the abandoned property a "loss" and deductible from the taxable income under this law.

A case more nearly analagous to that at bar is *Caltness Iron Company v. Block*, 6 L. R. App. Cases, 315, 324, 325, wherein

the House of Lords affirmed the judgment of the lower court in refusing to permit a deduction from income taxable under the Income Tax law of England, of an amount claimed by a coal company expended during the year in digging pits, necessary to reach the deposits of coal, which became useless during the year by reason of the exhaustion of the coal reached by such pits. Lord Penzance said: "The words 'profits received therefrom,' in this connection, means, I think, the entire profit derived from the 'mine,' deducting the cost of working it, not the cost of making it" and gave the following illustration of the principle: "A pit sunk to approach the mineral underground is not unlike a road made above ground, from the pit's mouth to the highway, as a means of transporting the mineral to the market. If a man were possessed of such a mine and such a road, it would be true that as the mineral was gradually worked out, the road and the capital involved in making it, would gradually be exhausted and lost; but the decaying character of the property would not make it the less subject to be taxed, according to its value or the profit obtained by using it, as long as the mineral lasted." p. 327.

The digging of new pits as the coal reached by the old ones became exhausted, was a "business necessity" on the part of the coal company as much as the erection of a new mill and the building a new railroad on the part of the Hawaiian Commercial and Sugar Company when the old ones became inadequate to answer the demands of the plantation. The money expended in making the pits that had become useless was as effectively "lost" as that expended in the old mill, buildings and railroad rendered useless by the substitution for them of the new and modern appliances.

The word "loss," and its plural "losses," used in the statute is not a technical term of art or trade but a simple word in common use. There is nothing to indicate that these words are used in the statute to express any other than their ordinary meaning. The dictionary definition of the noun, "loss," is "failure to hold, keep, or preserve what one has had in possession; deprivation of that which one has had; as the loss of money by gaming;

loss of health or reputation; loss of children; opposed to gain."
(Cent. Dic.) The central idea in each of these definitions is in-
voluntary parting with a thing. If property is lost it has passed
from the control and out of the possession of the loser. No
one can lose property and still have it in his possession and be
conscious of the fact that he has it. There is a difference be-
tween lost and abandoned property, still the actual loss to the
owner may be the same in each case. It cannot be seriously
contended that if a person voluntarily abandons property the
value or original cost of such property is a loss within the inten-
tion of the Income statute.

The evidence also shows that there were two mills in the old
buildings and that one of them was not in use at the time of
the completion of the new mill but it does not appear what was
the value of the unused mill nor when it ceased to be used. Even
on the theory of the Tax Appeal Court the loss for this unused
mill, whatever it was, occurred when its use ceased and could
not now be deducted as a loss unless it was shown that it was
abandoned during the year for which the return is made.

When the new mill and railroad came into use the old mill,
building and railroad did not part company with the taxpayer,
but were still in its possession and control. This property had
not been consumed "by fire" or lost "as a ship at sea." If it did
not possess the same value to the company as before, it was for
the reason that it had become useless since better appliances had
taken its place. If the Hawaiian Commercial and Sugar Com-
pany, Limited, had used the property or had needed its use and
been able to make the same use of it as formerly the property
would have been of the same value, after as before the substi-
tution of the new appliances, but since the company no longer
needed the use of the property, from its view point, there was
depreciation in its value and great "loss." This was not a loss
however, "actually sustained during the year incurred in trade,"
or by fire, or "otherwise actually incurred," within the meaning
and intent of the statute.

Advance in the price of property cannot be taken into account
in estimating "net income" subject to taxation, for any particu-

lar year, under an income tax law. *Gray v. Darlington,* 15 Wall. 63. The converse of this proposition follows that depreciation in the value of property cannot be considered for like purposes.

We are of opinion that the Tax Appeal Court was in error in its decision and that the same ought to be reversed and that the net income of the Hawaiian Commercial and Sugar Company subject to taxation for the period ought to be fixed at $291,675.81. It is so ordered.

*Smith & Lewis* and *L. J. Warren* for Hawaiian Commercial & Sugar Co., Ltd.

*Robertson & Wilder* for Assessor.