Peelle, J.,
delivered the opinion of the court:
The question in this case arises on the defendants’ demurrer to the petition on the ground that the facts alleged therein are not sufficient to constitute a cause of action.
The material facts averred in the petition are that during the late civil war the claimant was enrolled in the city of New York as first lieutenant, Company C, Fifty-eighth New York Volunteer Infantry, and as such was duly mustered and commissioned to take rank from September 7, 1861. He served in that capacity until October 1, 1862, when by reason of disabilities incurred in the line of duty, while stationed at Fair-fax Court House, Va., he resigned ,the service.
Upon his discharge he avers that he was entitled, if not furnished in kind, to travel pay and commutation of subsistence from the place of his discharge to the place of his enrollment at the rate of one day’s pay and commutation of subsistence for each 20 miles. He was onty furnished travel pay in kind from Fairfax Court House to Washington, D. C.
He further avers that under the provisions of the act of March 3, 1901 (31 Stat. L., 1119), making appropriations to supply sundry civil expenses of' the Government, he filed a claim for travel pa}*- and commutation of subsistence, which was adjusted by the accounting officers of the Treasury Department July 29, 1901,- and a balance was found due him for travel pay from Washington to New York City and for commutation of subsistence from Fairfax Court House to New York City of $34.75, from which amount the accounting officers deducted the sum of $1.04 as income tax under the provisions of section 86 of the act of July 1, 1862, leaving *60 $33.71 as the amount which the claimant was actually paid, instead of $34.75 so found due to him. Hence this action.
At the time of the discharge of the claimant he was entitled, under the act of January 29, 1813 (2 Stat. L., 796, as carried into the Revised Statutes, sec. 1289), “to transportation and subsistence from the place of his discharge to the place of his residence at the time of his appointment or to the place of his original muster into the service.” By the provisions of the same section the claimant was also entitled, in case the Government failed to furnish him .such transportation and subsistence in kind, to “travel pay and commutation of subsistence, according to his rank, for such time as may be sufficient for him to travel from the place of discharge to the place of his residence or original muster into service, computed at the rate of one day for every 20 miles.”
The defense is based on section 86 of the act of July 1,1862 (12 Stat. L., 472), as construed by the accounting officers of the Treasury Department in its application to this and like claims. That section, which was in force during the period of the claimant’s service, reads as follows:
“That on and after the first day of August, eighteen hundred and sixty-two, there shall be levied, collected, and paid on all salaries of officers, or payments to persons in the civil, military, naval, or other employment or service of. the United States, including Senators and Representatives and Delegates in Congress, when exceeding the rate of six hundred dollars per annum, a duty of 3 per centum on the excess above the said six hundred dollars; and it shall be the duty of all paymasters and all disbursing officers under the Government of the United States, or in the employ thereof, when making any payments to officers and persons as aforesaid, or upon settling and adjusting the accounts of such officers and persons, to deduct and withhold the aforesaid duty of three per centum, and shall, at the same time, make a certificate stating the name of the officer or person from whom such deduction was made, and the amount thereof, which shall be transmitted to the office of the Commissioner of Internal Revenue, and entered as part of the internal duties; and the pay roll, receipts, or accounts of officers or persons paying such duty, as aforesaid, shall be made to exhibit the fact of such payment.” .
Under the law as it then stood the claimant’s salary and allowances exceeded the rate of $600 per annum.
*61 Tbe claimant’s contention, in substance, is—
First. That travel pay and- commutation of subsistence is not such an emolument or income as could ever have been taxed under the act of 1862.
Second. That the act of 1862 was repealed by the act of July 14, 1870 (16 Stat. L., 257), and that therefore no deduction on account of income tax can be made from any sum paid since that date, such payment being income for the year when it was received.
Third. That the deduction was illegal because the act of 1862 and the amendments thereto were unconstitutional and void.
No claim was filed in the Treasury Department by the claimant for travel pay and commutation of subsistence until’ after the act of March 3,.1901. (31 Stat. L., 1179.) That act, so far as material to this case, provides:
• ‘ ‘ Back pay and bounty: For pajunent of amounts for arrears of pay of two and three jmar volunteers, for bounty to volunteers and their widows and legal heirs, for bounty under the act of July twenty-eighth, eighteen hundred and sixty-six, and for amounts for commutation of rations to prisoners of war in rebel States, and to soldiers on furlough, and to enable the Secretary of the Treasury to pay to members of the Fourth Arkansas Mounted Infantry, their heirs, or the duly authorized attorney of either, the pay and allowances of such officers and soldiers in accordance with the findings and report made by the referee appointed under the provisions of the act approved Februaiy twenty-seventh, eighteen hundred and ninety-nine, entitled ‘An act for the relief of the Fourth Arkansas Mounted Infantry,’ that may be certified to be due by the accounting officers of the Treasury during the fiscal year nineteen hundred and two, three hundred and twenty-five thousand dollars.”
That provision, it will be noted, does not, in terms, include “travel pay,” so in making the allowance the accounting officers evidently construed the term “arrears of pay” as including “travel pay.” Nor does the provision in terms include “commutation of subsistence” to officers honorably discharged from the service, but in the adjustment of the claimant’s account therefor the accounting officers no doubt construed the clause, “For commutation of rations to prisoners of war in rebel States and to soldiers on furlough,” as *62 including commutation of subsistence to honorably discharged officers; hence upon the basis or construction stated, in respect of both claims, the accounting officers must have adjusted the account in the present case; that is to say, thejr have treated both items of the claim as official pay or emolument and not as reimbursement for expenses incurred.
In the recent case of Sowle (38 O. Cls. B., 526), in considering a provision in an'appropriation act similar to the one here involved (though more general in its purposes for which the appropriation was made), the court said:
“Congress, in the passage of the appropriation act on which claimant founds her claim, recognized the right of the decedent to pay if he had not been paid (as he was not bjr the admissions of the demurrer), and that right being founded on an act of Congress makes consummate in his personal representative a right to whatever may have been due him. That right being existent under the statute, the jurisdiction of this court is open in order that there may be a judicial investigation and determination of the question as to whether there was anything due the decedent at the time of his death for services rendered during the civil war. The purpose of the law was to ascertain in the best mode known to the law as to what was the state of account between the decedent and the United States, and upon that finding to do justice in the payment of whatever balance might be round due decedent or his personal representatives.”
In the present case the accounting officers certified the amounts found due the claimant for travel pay and commutation of subsistence, and the same was paid to him less the amount retained as income tax, as before stated.
Following the case of Sowle (supra), and the authorities there cited, it must be held that the court has jurisdiction of the subject-matter, and though the claim herein was not filed in the Department or in this court until after the passage of the act of March 3, 1901 (supra), we are of the opinion that the appropriation itself operates to remove the bar of the statute of limitation, and this was in effect the ruling in the case of liukill (16 C. Cls. B., 562, 565), where a similar question was involved and the court said:
“Every appropriation for the payment of a particular demand, or class of demands, necessarily involves and includes the recognition by Congress of the legality and justice of each *63 demand, and is equivalent to an express mandate to the Treasury officers to pay it. This recognition is not affected by any previous adverse action of Congress; for the last expression by that body supersedes all such previous action.”
In the case of Simons (19 C. Cls. R., 601, 610), referring to the effect of an appropriation made to pay a claim otherwise barred by the statute of limitation, it was said:
“When Congress appropriate money generally, as for the annual expenses of the Government, no legislative intent can be inferred to renovate a claim or class of claims barred by the statute of limitations. But when Congress appropriate money for the payment of a designated claim or class of claims airead}7 barred by the statute of limitations it must be inferred that .the legislative intent was to give a new promise founded upon the old consideration. In such cases the statute of limitations begins to run from the enactment of the appropriation act.”
Neither the question of jurisdiction nor the question of the bar of the statute of limitation is directly raised by the defendants, but as no form of pleading, or pleading at all for that matter, is essential to raise either question in this court, we have thought best to make the comment we have preliminary to the consideration of the main question raised by the demurrer.
As the claimant severed his connection with the Army before the act of July 1, 1862 (supra), was amended, that is the only statute applicable, if at all, to his claim, and therefore we need not consider the amendatory acts of 1861,1866, and 1867.
When the claimant was denied transportation and subsistence in kind to his place of residence he thereby became entitled to travel pay and commutation of subsistence according to his rank “at the rate of one day for every 20 miles;” and had he then received the same the tax of 3 per cent, if applicable thereto, would have been levied and collected- That is to say, the claimant did not at the time the act of 1862 was in force make application for the payment of such travel pay and commutation of subsistence, and for that reason no formal deduction from the amount could be made of the tax, but in law, if the amount due the claimant was subject to the deduction, then the tax attached thereto the moment the claim *64 accrued, and was not taken away by the repealing act of July 14, 1870 (16 Stat. L., 261).
On the contrary, tbe repealing section expressty saves “any act done, right accrued, or penalty incurred under former acts ” and continued such acts in force so far as might be'necessaiy for collecting the taxes, the right to which had theretofore accrued or might thereafter accrue under said acts. Furthermore, if the tax was assessable against the claimant when it accrued, the claimant can not now take advantage-of his laches in presenting the claim, the removal of which has been effected by the liberality of the Government in. making an appropriation to pay the claim.
Therefore, if the tax was assessable the accounting officers were correct in settling the account and deducting the tax as of the date when the claimant was discharged.
The act of July 1, 1862 (supra), was enacted during the existence of the late civil war and was executed with judicial sanction until repealed by the act of July 14, 1870 (supra); and as we are considering the rights of the parties in this case as they existed in 1862, we will not stop to consider the constitutionality of the act, which was upheld by the Supreme Court when questions arising under the act and amendments thereto were brought before it. (Barnes v. Railroad, 17 Wall., 294; Stockdale v. The Insurance Co., 20 Wall., 323; and other cases.) Furthermore, in referring to this act and the amendments thereto in the case of Pollock v. Farmers' Loan and Trust Co. (157 U. S., 429, 573), Mr. Chief Justice Fuller says:
“ These acts grew out of the war of the rebellion and were, to use the language of Mr. J ustice- Miller, ‘ part of the system of taxing incomes, earnings, and profits adopted during the late war, and abandoned as soon after that war was ended as it could be done safely.’ (Railroad Co. v. Collector, 100 U. S., 595, 598.)” '
The language of section 86 of the act of 1862, so far as material to the levy and collection of the tax, is:
c ‘ That on and after the first day of August, eighteen hundred and sixty-two,' there shall be levied, collected, and paid on all salaries of officers, or payments to persons in the civil, military, naval, or other employment or service of the United *65 States * * when exceeding the rate of six hundred dollars per annum, a dutjr of three per centum on the'excess above the said six hundred dollars.”
The clear meaning of that language is that all salaries or other payments accruing to officers of the United States in excess of $600 per annum shall be subject to the tax of 3 per cent. " And if any such payments constitute in part reimbursement for money expended, pursuant to law, then only so much thereof as may be in excess of such expenditure shall be reckoned in ascertaining the excess of $600 per annum. That is to say, the income accruing to such officer from the United States in excess of $600 in any year shall be subject to the tax; and this view is in harmony with the language of section 90 of the act, wherein it is provided “that there shall be levied, collected, and paid annually, upon the annual gains, profits, or income of every person residing in the United States,” from any source whatever, “if such annual gains, profits, or income exceed the sum of six hundred dollars,” etc., and in estimating such annual gains, profits, or income section 91 provides that “all national, State, and local taxes lawfully assessed * * * shall be first deducted;” so that we reach the conclusion that although the words “annual gains, profits, or income ” do not appear in section 86 respecting officers and others in the employ of the United States, yet the meaning is the same. That is to say, the annua]; net income of such officers in excess of $600 was made subject to such tax. (See Grant v. Hartford and New Haven R. R. Co., 93 U. S., 225; Barnes v. Harrisburg and Portsmouth R. R. Co., 17 Wall., 294.)
What then is the basis for the tax in the present casé? By section 1289 the claimant, when honorably discharged from the service; was entitled to transportation and subsistence from the place of his discharge to the place of his residence, and when that was denied him he thereby became entitled to have such travel and subsistence commuted according to his rank at the rate of one day’s pay and subsistence for every 20 miles of the distance. Such is the unequivocal meaning of the statute; but it does not follow that the amount of such *66 transportation and subsistence thus commuted was necessarily consumed in defraying the claimant’s expenses, and so, to ascertain that amount and secure the exemption, of the same from taxes, the accounting officers held that it was incumbent upon the claimant to render an account thereof. This he does not appear to have done.
Respecting the ruling of the accounting officers in this class of claims, the Comptroller, in a letter to the Attorney-General, which is set out in the defendants’ brief and not' controverted by the claimant as a statement of fact, says:
“It has been uniformly held by the accounting officers of the Treasury that in the settlement of claims for travel allowances, in the cases of commissioned officers who were discharged in the period from September 1, 1862, to July 31, 1870, the entire amount of pay and commutation of subsistence for traveling allowed is subject to tax at the rate which existed at the date of the officer’s discharge from thq service.”
W e are thus confronted with the uniform and contemporaneous constraction of the statute by the accounting officers in subjecting the travel pay and commutation of subsistence of officers to the tax imposed by section 86, and therefore, unless such construction is clearly erroneous, it should not be disregarded.
In regard thereto the Supreme Court, in the case of United States v. Moore (95 U. S., 760, 763), said:
“The construction given to a statute by those charged with the duty of executing it-is alwa3rs entitled to the most respectful consideration, and it ought not to be overruled without cogent reasons.” •
And in considering the same question, the court, in the later case of United States v. Johnston (121 U. S., 236, 253), said:
“The contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, unless it be clear that such construction is erroneous.”
On the other hand, the claimant contends that the entire-amount of pay and commutation of subsistence for traveling was allowed to him as a reimbursement for money expended *67 for transportation and subsistence, and that therefore no part of it can be regarded as salary, gain, or income subject to tax. This contention is based mainly on the decision in the case of Smith v. United States (158 U. S., 346), affirming the decision of this court (26 C. Cls. R., 568), where the question of mileage or travel fees to a district attorney under Revised Statutes, sections 823 and 824, was under consideration, the court holding that the words in the fee bill “for traveling from the place of his abode to the place of holding any court of the United States in his district, or to the place of any examination before a judge or commissioner of a person charged with crime, 10 cents a mile for going and 10 cents a mile returning,” was an allowance to such officers as a reimbursement or commutation of traveling expenses, the court saying:
“While an allowance for travel fees or mileage is, by section 823, included in the fee bill, we think it was not intended as a compensation to a district attorney for services performed, but rather as a reimbursement for expenses incurred, or presumed to be incurred, in traveling from his residence to the place of holding court, or to the office of the judge or commissioner. The allowance of mileage to officers of the United States, particularly in the military and naval service, when traveling in the service of the Government, is fixed at an arbitrary sum, not only on account of the difficulty of auditing the petty items which constitute the bulk of traveling expenses, but for the reason that officers travel in different styles; and expenses which in one case might seem entirely reasonable might in another be deemed to be unreasonable. There are different standards of traveling as of living, and while the mileage in one case may more than cover the actual expenses, in another it may fall short of it. It would be obviously unjust to allow one officer a certain sum for traveling from New York to Chicago, and another double that sum, and yet their actual expenses may differ as widely as that. The object of the statute is to fix a certain allowance, out of which the officer may make a saving or not, as he chooses or is able. And while, in some cases, it may operate as a compensation, it is not so intended, and is not a fee, charge, or emolument of his office within the meaning of section 834. It is much like the arbitrary allowance for the attendance of witnesses and jurors, which may or maj^ not be sufficient to pay their actual expenses, depending altogether upon the style in which they choose to live.”
*68 Thus the court held that the travel fees of a district attorney did not form a part of his emolument account within the meaning of section 834. Not that the amount thereof may not have exceeded the expenses of such officer, but that the same did not enter into his emolument account, or, as the court said:
“The object of the statute is to fix a certain allowance, out of which the officer may make a saving' or not, as he chooses or is able. And while, in some cases, it maj^ operate as a compensation, it is not so intended, and is not a fee, charge, or emolument of his office within the meaning' of section 834.”
In the present case, section 86 of the act of 1862 provides in express terms that “all salaries of officers or payments to persons ” in the military service of the United States in excess of $600 per annum shall be subject to the tax of 3 per cent.
Does that mean that only the salary proper of such officer in excess of $600 per annum shall be subject to such tax? We think not. The Congress by the language .used evidently intended that whatever sums of money were paid to such officer by the United States, whether on account of salary or otherwise, in excess of $600 per annum, should share the tax equally with every other person whose “ annual gains, profits, or income ” in excess of $600 per annum, as provided by section 90 of the act, are subject to such tax.
Any other construction would in effect eliminate such tax from all payments made to such officer by the United States other than those made on account of salary proper, though such paj^ments might be largely in excess of $600 per annum, or even larger than the salary itself.
Conceding that so much of the commuted pay for travel and subsistence as may be necessary to reimburse the claimant for his outlay would not be taxable, still the fact remains that any balance thereof would necessarily form a part of the nel gain or income of the claimant for the year in which the same accrued, and his failure to present the account for payment at that time can not now be taken advantage of to defeat the tax to which the Government was then entitled.
The appropriation act is a new promise founded upon an old consideration and operates to revive the claim as it existed when the old promise ceased to have legal force.
*69 The accounting officers adjusted the account as it stood when both the income and the tax accrued, the same as in like cases with all other officers, and the failure of the claimant to get relief from the tax on the amount of his actual expenses was because he failed to render an account thereof, and not because the Government has done any act which estops it from asserting its right thereto as of the date when the tax first accrued, to which its right was saved by the repealing section of the act of 1870 (supra).
This in effect was the ruling of the accounting officers, and, in view of the decisions to which we have referred respecting the weight to be given to the contemporaneous construction of a statute by those charged with the duty of executing it, we can not regard the question as an open one, nor are we convinced that the construction placed upon the act by the accounting officers is erroneous, and for that reason we must hold that the defendants’ demurrer is well taken.
This case might have been disposed of on the ground of de minimis non curat lex, as the amount involved is but $1.04. (Grant v. United States, 7 Wall., 331, and Northern Pacific Railroad case, 15 C. Cls. R., 428.)
For the reasons given, the demurrer must be sustained and the petitions dismissed.