# IN RE ASSESSMENT OF INCOME TAXES, EWA PLANTATION COMPANY.

## APPEAL FROM TAX APPEAL COURT, OAHU.

ARGUED DECEMBER 23, 24, 1907.   DECIDED JANUARY 13, 1908.

### HARTWELL, C.J., WILDER AND BALLOU, JJ.

TAXATION—*deductions under income tax law.*

Under the income tax law of Hawaii a corporation is not entitled to deduct from its gross income the estimated depreciation of its plant, either as an amount expended in the production of movable property under Sec. 1280 nor as an expense or loss actually sustained or incurred under Sec. 1281.

ID.—*notice of assessment—waiver of objection.*

Under Sec. 1287, by reference to Sec. 1243 as amended, the tax assessor is required to give notice on or before April 1 of an assessment of income in excess of the return, but a taxpayer who has taken his appeal cannot object to lack of notice for the first time in the supreme court.

ID.—*evidence of expenses admissible under circumstances.*

A taxpayer having made his return under an understanding with the treasurer of the Territory that depreciation would be allowed, is entitled, upon offer to the tax appeal court, to show expenses actually incurred in case of the disallowance of the estimated· depreciation.

### OPINION OF THE COURT BY BALLOU, J.

Ewa Plantation Company returned its gross income for the year 1906 at $1,907,928.77 derived almost entirely from sales of sugar. Against this it claimed a deduction of $1,290,109.76 under the heading "Amounts expended in the purchase or production of movable property mentioned in Schedule A." This with other deductions which are not in issue brought its net income, as returned, to $577,929.56, on which the tax at two

per cent. amounted to $11,558.59. Included in the deduction of $1,290,109.76, as shown by the books of the corporation, was the amount of $85,304.36 written off as depreciation of its property against the crop of 1906. This item was disputed by the assessor, who subtracted it from the deduction claimed and assessed the net income at $663,233.92 and the tax at $13,264.65. The plantation appealed from the total assessment and was held to be entitled to a certificate of appeal. *Ewa Plantation Co. v. Holt,* 18 Haw. 362. The only controversy before the tax appeal court was upon the item of $85,304.36 upon which the tax amounts to $1706.09. The tax appeal court sustained the contention of the plantation that it was entitled to the deduction claimed, from which decision the assessor appeals to this court.

The item of depreciation was calculated upon a system adopted by the plantation in 1903, and is admittedly fair as to amount, provided depreciation of property can be allowed either as an amount expended in the production of movable property within R. L. Sec. 1280 or as an expense or a loss actually sustained or actually incurred within R. L. Sec. 1281. In arriving at the amount, the property of the plantation was divided into four classes, with reference to the fact that the plantation is being conducted upon a leasehold, of which thirty-four years of the term remained at the time of the calculation.

Class A comprises an estimated list of properties which will revert to the lessor and will have no residual value at the end of the lease. It includes such items as mill buildings, roads and bridges, storm ditches, reservoirs, and portions of the mill, railroad and pump machinery. Upon these items the book value of the property at the beginning of each year is divided by the remaining years of the lease and the quotient is the depreciation for the year. Class B comprises an estimated list of properties which will revert to the lessor and will have no residual value but whose life is estimated at less than the unexpired term of the lease. This class includes, among other

items, pump buildings, pipe lines, wells, boilers, and portions
of the mill, pump machinery and railroads. In this class the
depreciation is estimated by dividing the book value by the
estimated life of the article, which ranges from twenty-seven
years for the first three items enumerated down to four years
for certain leasehold improvements. Class C comprises an
estimated list of properties which will not revert to the lessor
at the end of the lease but will have a residual value and whose
life under the present system is estimated to be longer than
the unexpired term of the lease. The principal items in this
class are steam plows and rolling stock and the depreciation
is computed only on the difference between the cost and the
residual value at the end of the lease. Class D comprises an
estimated list of properties which will not revert to the lessor
at the end of the lease, which will have no residual value and
whose life is estimated to be less than the unexpired term of
the lease. This class comprises live stock, carts and wagons
and cane loading machines and the depreciation is calculated
upon their estimated life. The total depreciation for the year,
calculated under this system, is further apportioned among
the three crops under cultivation at the same time in proportion
to acreage, with the exception of the depreciation on the mill
and mill buildings which is charged entirely to the crop har-
vested during the current year.

This elaborate and scientific system has been contrasted in
argument with what may be called the replacement system, in
which net income is computed by deducting from gross income
the cash actually expended in running expenses including the
replacement of articles actually worn out. It cannot be denied
that as a business method the plan adopted by the plantation
is superior, but this does not necessarily imply that this is the
method prescribed by the legislature for the purposes of tax-
ation.

It will be observed at the outset that the two systems are
mutually exclusive. If depreciation upon a given article is

deducted from gross income from year to year, no allowance can be made for the cost of a new article during the year the replacement actually occurs without giving the tax payer the benefit of a double exemption. Conversely any allowance given by the statute for the cost of the replacement necessarily implies that the value of the article replaced has not already been allowed in yearly instalments. Theoretically, with a tax system and a business both of indefinite duration the two systems would yield the same result in the long run, but practically there would be considerable difference. An article might last longer than its estimated life, or it might become obsolescent and be discarded for a more modern invention before the end of the period. Replacements might accumulate in a given year to the extent of wiping out income and showing a loss, for which no corresponding rebate could be claimed from the government. In the case of a business contemplating a definite termination the difference would be still greater. This is sharply accentuated by the case at bar, where the plantation is on a leasehold, but would seem to be applicable to all corporations organized, as required by statute, with a definite term. In the present case it is claimed that one thirty-fourth of the value of the mill buildings, roads and bridges, storm ditches and reservoirs was "expended" in the production of the crop, not because their use had lessened their actual value by this amount but because at the end of thirty-four years they would revert to the lessor. "Depreciation" on this class of items is merely in the nature of a sinking fund to recoup their cost, a deduction eminently proper between the corporation and its stockholders, but not within the deductions allowed by the statute. Moreover, most of the items of this class are permanent improvements, not expected to be replaced within the life of the plantation, and are therefore within the positive prohibition of the third paragraph of Sec. 1281, forbidding deductions for new buildings, permanent improvements or betterments. Under this section, for example, the cost of a

new reservoir could not be deducted from gross income, and manifestly the same result would be accomplished by the system of deducting one thirty-fourth of its cost each year until the expiration of the lease. Another item is stated as the depreciation on "wharf" but was shown by the evidence to be the proportionate part of a sum expended in 1905 to assist in the dredging of the channel of Pearl Harbor.

Enough has been said to show that the deduction as claimed by the plantation should not have been allowed, but we are further satisfied that in the case of more perishable articles, whose replacement would be properly charged to running expenses, the statute contemplates the deduction of cash actually expended at the time the expenditure is made, and not a deduction based upon estimated depreciation. Were there no system prescribed for computing the "net profit or income above actual operating and business expenses" taxed by Sec. 1279 there would be much force in the argument that the net profit should be computed only after the careful provision for the future which a conservative corporation makes in dealing with the question of dividends, although the question is by no means free from doubt. In spite of the definitions of net profits given by standard authorities on accounting, the United States supreme court has said: "The public, when referring to the profits of the business of a merchant, rarely ever take into account the depreciation of the buildings in which the business is carried on, notwithstanding they may have been erected out of the capital invested. Popularly speaking the net receipts of a business are its profits," and construed a statute relating to the profits of the Centennial accordingly. *Eyster v. Centennial Board of Finance,* 94 U. S. 500. In our statute, however, Sec. 1281 (as amended S. L. 1905, Act 87), makes specific provisions regarding deductions, the portions now material being as follows:

"Section 1281. Income, How Computed. The net profits or income of all corporations shall include the amounts paid

or payable to, or distributed or distributable among shareholders from any fund, or used for construction, enlargement of plant, or any other expenditure or investment, paid from the net profits, made or acquired by said corporation, during the taxation period next preceding, whether that period be the first taxation period or any succeeding period.

"In computing incomes the necessary expenses actually incurred in carrying on any business, trade, profession or occupation, or in managing any property shall be deducted and also all interest paid by such person or corporation on existing indebtedness. And all government taxes, and license fees, paid within the taxation period next preceding whether that period be the first taxation period or any succeeding taxation period shall be deducted from the gains, profits or income of the person who, or the corporation which, has actually paid the same, whether such person or corporation be owner, tenant or mortgagor; also all losses actually sustained during the taxation period next preceding, whether that period be the first taxation period or any succeeding taxation period, incurred in trade, or arising from losses by fire not covered by insurance, or losses otherwise actually incurred.

"Provided, that no deduction shall be made for any amounts paid out for new buildings, permanent improvements or betterments, made to increase the value of any property or estate."

The expressions "necessary expenses actually incurred," "losses actually sustained," and "losses otherwise actually incurred" clearly indicate the intention of the legislature to confine this class of deductions to the actual losses and expenses of the replacement system as distinguished from the estimated losses and expenses of the depreciation system. These phrases are universally used to describe the replacement system when the two are contrasted. Thus in *Collness Iron Company v. Black*. L. R. 6 App. Cas. 315, 338, the principal opinion, in discussing a previous case, says: "In *Forder v. Handyside* the Exchequer Division came to a decision as to repairs, estimated but not *actually incurred*, which whether it was right or wrong, is no longer, since 41 Vict. c. 15, s. 12, to apply." In the report of *Forder v. Handyside,* L. R. 1 Ex. Div. 233,

a note says "It was admitted on the argument that the company had written off a certain amount for the repairs *actually executed,* and that they might properly do so." In *Queen v. Midland Railway Company* 15 Ad. & Ell. N. S. 353, 364, the court speaks of an expense as "an unobjectionable form of deduction when it should either be *actually incurred* or provided for." In *Grant v. Hartford and New Haven Railroad Company,* 93 U.S. 225, counsel for the tax payer argues "that the company is entitled to deduction of a fair percentage for depreciation, reproduction, etc., although the amount has not been *actually expended."* These instances merely illustrate the construction of language which appears to us not only to require the exclusion of an estimated depreciation but to have been definitely intended for that purpose. We therefore affirm on this point the decision *In re Income Taxes, Honolulu Rapid Transit & Land Co.,* 18 Haw. 15.

With regard to the claim that estimated depreciation should be allowed as an "amount expended" under that portion of section 1280 including as income "the amount of sales of all movable property less the amount expended in the purchase or production of the same" it is apparent that an allowance of this claim would put corporations engaged in the production of movable property at a considerable advantage as compared with corporations in other lines of business. A corporation engaged in buying and selling movable property suffers the same depreciation as the corporation in this case, but it could hardly be urged that depreciation upon their buildings or office furniture was an amount expended in the purchase of the goods in which they dealt. Corporations not dealing in movable property, as, for example, railroad and street railway companies, would of course have no possible claim under this section. It is sufficient to say that we do not consider that this language can be made to cover depreciation of plant but that the word "depreciation" is more properly contrasted as in the instance in *Grant v. Hartford and New Haven Railway,* supra,

with "amount actually expended." It may be true, as stated in the opinion of the tax appeal court, that the "wasting of a steam boiler is as real an expense as the consumption of the fuel beneath it," but we believe neither one to be deductible under this section but only the amount of cash paid in each instance; in other words, if the corporation found it advisable to buy two years' supply of coal in one year the whole amount expended for the coal would be properly deductible in that year and not distributed according as the fuel was consumed. It may also be true that no corporation could make a true showing to its stockholders by any other method than that of allowing for depreciation. But the same remark is applicable as has been made with regard to schedule "D" of the English income tax act. "It is clear from these enactments that the law does not permit, as regards such assessments, all deductions which a prudent trader would make in ascertaining his own profits." *Alianza Co. v. Bell* (1905), 1 K. B. 184, 196.

The language of our statute was largely taken from the federal income tax law of 1894 which was declared unconstitutional before being construed in detail by the courts. The language of other statutes is so dissimilar that decisions under them afford but little aid. By the English income tax act of 1842 it was provided that the "duty * * * shall be computed on a sum not less than the full amount of the balance of the profits or gains of such trade, manufacture or adventure or concern upon a fair or just average of three years." After the case of *Forder v. Handyside,* L. R. 1 Exch. Div. 233, denying the right to deduct estimated depreciation, the act was amended in 1878 giving specific authority to the assessors to "allow such deduction as they may think just and reasonable as representing the diminished value by reason of wear and tear during the year of any machinery or plant used for the purposes of the concern." See *Cunard Steamship Co. v. Coulson,* (1899) 1 Q. B. 865.

In the United States on the other hand the legislative tendency seems to have been against the allowance of estimated depreciation. By the act of June 30, 1864, Sec. 122, 13 Stat. 284, amended by the act of July 13, 1866, 14 Stat. 139, certain enumerated companies that had paid interest on indebtedness or "that may have declared any dividend * * * as part of the earnings, profits, income or gains of such company, and all profits of such company carried to the account of any fund or used for construction, shall be subject to and pay a tax of five per cent. on the amount of all such interest, or coupons, dividends or profits." Under the general language of this section the supreme court allowed a deduction of such losses by depreciation, though estimated, as actually occurred during the period covered by the petition. The amounts had been written off by the railroad to profit and loss and it is not clear from the reports how the loss occurred nor does it appear that there was any claim for the depreciation of the entire roadway, rolling stock, etc., of the company, the main item being for the depreciation of one connecting track. *Little Miami, etc., Railway Co. v. United States*, 108 U. S. 277.

In *Grant v. Hartford and New Haven Railroad Co.*, 93 U. S. 225, there are also references to depreciation, although the actual decision was to allow the value of an old bridge which had been replaced as a current expense, which would be inconsistent with a previous allowance of its value by a system of yearly depreciation.

The corresponding section of the income tax law of 1894, however, assesses the tax "on the net profits or income above actual operating and business expenses including expenses for materials purchased for manufacture or bought for resale, losses and interest on bonded and other indebtedness." Act of August 27, 1894, Sec. 32, 28 Stat. 556. It will be observed that this language is very different from that under which the previous cases were decided and in effect prescribes the replacement system.

In similar manner the provision for estimating personal incomes has been altered from the general language of sections 116 and 117 of the act of June 30, 1864, by confining necessary expenses to those "actually incurred" and expressly excluding "all estimated depreciation of values and losses within the year on sales of real estate purchased within two years." Act of August 27, 1894, Sec. 28. This exclusion of all estimated depreciation of values first appeared in the act of March 2, 1867, ch. 13, and again in act of June 14, 1870, Sec. 9, in the latter case disconnected from the somewhat confusing reference to losses on real estate. In Foster and Abbott, Income Tax Law of 1894, each provision of the act is annotated with the corresponding provisions of previous statutes, and an examination of the development of the law strengthens the impression that the intent of the latest statute was to confine deductions to actual cash replacements.

In the plantation's notice of appeal from the assessment of its income to the tax appeal court it is claimed that the assessment and levy is illegal and void and in violation of the Organic Act, Secs. 5, 6, 10, 55, 81, 83; Revised Statutes of the United States, Secs. 1850, 1851 and 1977 as well as the taking of property without due process of law, and a denial of the equal protection of the law in violation of article 5 and section 1 of article 14 of the amendments to the Constitution of the United States. The only points urged in support of these sweeping objections are, first, that there is no authority except under Sec. 1285 to add to the amount of the tax payer's return, which is so plainly without merit as to require no discussion, (*In re Hayes,* 16 Haw. 796,) and, second, that the law is unconstitutional in failing to provide for a notice of an assessment raising the amount of the income from the tax payer's return, or in the alternative that if such notice is required by the statute it was not given in this case. We are of the opinion that Sec. 1287 requires notice of an assessment in case of the tax payer's return to be given on or before April 1 in each year, following

the corresponding section of property tax act (Sec. 1243, amended S. L. 1905, act 89, Sec. 7). The statute is therefore unobjectionable in this respect. The alternative claim that such notice if required was not given in this case applies only to the increase and not to the whole assessment, was not mentioned or covered by the appeal to the tax appeal court nor presented to that court, but appears in the appellate court for the first time. It is too late to raise this objection here. The function of such a notice is to give the tax payer an opportunity to take his appeal and if it is defective either in substance or in time of sending the objection should be taken at the outset.

While we cannot sustain the decision appealed from, allowing the item of depreciation as it appears on the books of the corporation, we are nevertheless of the opinion that the plantation should be permitted to show any actual expenditures in the nature of running expenses which would properly be included in its total claim of $1,290,109.76 expended in the production of its crop. Under its system of bookkeeping some of these items were included in the account of permanent improvements, and the item of permanent improvements in another part of the return was undoubtedly computed by the inclusion of some of these items. Ordinarily in the absence of mistake or other reasonable excuse a return is binding on the tax payer, but in this case the return was made under the representation of the treasurer of the Territory that estimated depreciation would be allowed as a deduction, which arrangement was rescinded by the latter only some months after the return was made, in view of the decisions of *In re Income Taxes Honolulu Rapid Transit & Land Co.,* 18 Haw. 15, and *In re Taxes Laupahoehoe Sugar Co.,* 18 Haw. 206. We think this sufficient reason for allowing the plantation to show the facts claimed, and that it lost no rights by litigating the matter of depreciation, provided it offered to prove its alternative claim before the tax appeal court, which was done. It may be observed, however, that so far as the year 1906 is concerned the offer to prove that of the sum of $40,502.48 only $4,300.84

was for additions and permanent improvements cannot be reconciled with the plantation's report for that year which shows that over half of the expenditure was for new buildings, and that other permanent improvements were made. The tax appeal court rejected the offer of proof, the evidence being unnecessary under their decision. We do not think it advisable to remand the case for further proceedings on account of the uncertainty arising from the limited tenure of the tax appeal court, and will therefore entertain a motion under R. L. Sec. 1257, if made within five days, to receive the evidence rejected by the court below.

The decision of the tax appeal court is reversed, and the case retained on the calendar of this court for the purpose of the motion referred to, in default of which the assessment will be affirmed.

*D. L. Withington, H. E. Cooper, A. Lewis, Jr.,* and *Henry Holmes* (*Castle & Withington, H. E. Cooper, Smith & Lewis* and *Holmes & Stanley* on the brief) for Ewa Plantation Company.

*M. F. Prosser* (*C. R. Hemenway,* Attorney General, with him on the brief) for the tax assessor.

---

January 20, 1908. Per curiam: No motion to present further evidence having been made in accordance with leave reserved in the opinion filed January 13, the decision of the tax appeal court appealed from is reversed and the assessment made by the tax assessor affirmed.