BarNey, J.,
delivered the opinion of the conrt:
The plaintiff in this suit enlisted on September 19, 1899, in the United States Army; was assigned to Troop E, Eleventh United States Volunteer Cavalry; and discharged as quartermaster sergeant January 29, .1901, at Manila, P. I., as per General Order No. 145, Headquarters, Division of the Philippines, on the ground of his services being no longer required. He now seeks to recover the extra pay provided by the act of January 12, 1899 (30 Stats., 784), and the act of May 26,1900 (81 Stats., 217).
The act of January 12, 1899, provides in brief that in lieu of granting leaves of absence and furloughs prior to muster out of service of officers and enlisted men belonging to the volunteer organizations hereafter mustered out of the service, all officers and enlisted men who shall serve honestly and faithfully beyond the limits of the United States shall be paid two months’ extra pay on muster out and discharge from the service from any money in the Treasury not otherwise appropriated. In the Pierson case (37 C. Cls., 60) this statute was held to be prospective and would therefore be applicable to plaintiff’s service.
*535 This suit was brought February 13, 1907, and as the claim of the plaintiff accrued at the date of his discharge, which was January 29, 1901, it is barred by the statute of limitations unless revived by subsequent legislation. It follows therefore that the only question in this case is whether the plaintiff’s claim is so barred. To avoid the bar of the statute the plaintiff depends upon the well-settled rule of law applicable to such cases that when Congress appropriates money for the payment of a designated claim or class of claims already barred by the statute of limitations it must be inferred that the legislative intent was to give a new promise upon the old consideration. (Simon’s case, 19 C. Cls., 601; Sowle’s case, 38 C. Cls., 525; Galm’s case, 39 C. Cls., 55.)
To bring himself within this rule the plaintiff cites several appropriation acts of Congress, extending from 1902 to 1909, containing substantially the same provision, which is as follows:
“ For payment of arrears of pay and allowances on account of the services of officers and men of the Army during the War with Spain and in the Philippine Islands that may be certified to be due by the accounting officers of the Treasury during the fiscal year nineteen hundred and nine and that are chargeable to the appropriations that have been carried to the surplus fund, fifty thousand dollars.”
On the other hand the defendants contend that the statutes cited relating to arrears of pay have no application relating to extra pay provided by the act of January 12, 1899, sufra. It will be seen that the act of January 12,1899, provides that the extra pay mentioned is to be paid “ from any money in the Treasury not otherwise appropriated,” thus providing a permanent indefinite appropriation out of which all claims arising under this statute are to be paid. The returns from the Treasury Department show that all claims of this character have always been paid from this permanent appropriation fund and have never been paid out of the appropriation provided for arrears of pay in the several acts mentioned and depended upon by the plaintiff to take this claim out of the statute of limitations.
*536 We think the contention of the defendants is sound. The rule in the Simon case and other cases cited is based upon the presumption that Congress, by making appropriations for designated claims or classes of claims, thereby indicated an intent to revive them by giving a new promise on the old consideration. It would seem to follow from this theory that such intent must clearly appear from such legislation and that we can not go afield to infer it.
Congress is presumed to have known at the time of the passage of the several appropriation acts depended upon by the plaintiff to revive his claim to have been aware of the fact that claims for extra pay were paid out of the permanent fund provided for by the act of January 12, 1899, supra, and not out of the fund provided for by the other appropriation acts noted, and that the committee preparing these bills actually knew it is undoubted. We do not believe that an appropriation act providing a fund for the payment of arrears of pay can be construed to revive a claim for extra pay; certainly not under the circumstances as shown.
The plaintiff also relies somewhat upon the following provision in the act of December 22,1911, making appropriations for urgent deficiencies:
“ No claim for arrears of pay, bounty, or other allowances growing out of the service of volunteers who served in the Army of the United States during the War with Spain shall be received or considered by the accounting officers of the Treasury unless filed in the office of the Auditor for the War Department on or before December thirty-first, nineteen hundred and fourteen.”
It is contended that Congress thereby extended the time for the payment of claims of this character to December 31, 1914. We do not see how it can be said that an act limiting the time for the consideration of claims can be said to revive claims already barred by the statute of limitations.
It follows that the several appropriation acts relied upon by the plaintiff show no intent upon the part of Congress to revive his claim, and that it was barred by the statute of limitations at the time of the commencement of this suit. The petition must, therefore, be dismissed.
Howry, J., was not present when this case was heard and took no part in its decision.