### HUBINGER v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Second Circuit.
December 2, 1929.

No. 19.

Adrian C. Humphreys and Newton K. Fox, both of Washington, D. C. (Humphreys & Gwinn, of Washington, D. C., of counsel), for appellant.

Sewall Key and John Vaughan Groner, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel Bureau of Internal Revenue, of Washington, D. C., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The appellant, in 1920, was the owner of a six-story building in New Haven, Conn., which was rented for business purposes. On February 14, 1920, a fire burned off the tower, the roof, the sixth, and a part of the fifth floors. The lower floors were damaged by smoke and water. After the fire, the appellant spent $70,872.14 in reconditioning the building. The tower was not rebuilt; the same kind of materials were used for reconditioning as were originally in the building. No improvements or betterments were made;

some of the damaged floors were covered with linoleum at a somewhat smaller expense than if they had been repaired; and the life of the building was not extended. In fact, it was not in as good condition after the fire as it had been before.

The value of the building in 1913 was $125,000, and prior to the fire was $225,000. It was insured for $29,730, and the insurance collected was expended in reconditioning it.

The appellant contends that he was entitled to a deduction from his gross income of the difference between his expenditures of $70,872.14 and the insurance of $29,730, or $41,142.14, in calculating his income tax.

The Board of Tax Appeals did not allow the deduction claimed, either as a necessary expense or as a loss sustained. There was no definite proof of the salvage value of the building after the fire.

The statutory provisions particularly to be considered are the following:

"Sec. 214. (a) That in computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid * * * in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity; * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business; * * *

"(6) Losses sustained during the taxable year of property not connected with the trade or business * * * if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise. * * *

"Sec. 215. That in computing net income no deduction shall in any case be allowed in respect of—

* * * * * *

"(c) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made. * * *"

Revenue Act of 1918, c. 18, 40 Stat. 1066, 1067.

The following provisions in Treasury Department Regulations 45, articles 49 and 141, are also pertinent:

"Art. 49. *Compensation for Loss.*—In the case of property which has been lost or destroyed in whole or in part through fire, * * * the amount received by the owner as compensation for the property may show an excess over * * * its cost * * * (after making proper provision * * * for depreciation to the date of the loss, damage, or transfer). The transaction is not regarded as completed at this stage, however, if the taxpayer proceeds immediately in good faith to replace the property. * * * In such a case the gain, if any, is measured by the excess of the amount received over the amount actually and reasonably expended to replace or restore the property substantially in kind, exclusive of any expenditures for additions or betterments. * * *"

"Art. 141. *Losses.*—Losses sustained during the taxable year and not compensated for by insurance or otherwise are fully deductible (except by nonresident aliens) if (a) incurred in the taxpayer's trade or business, or (b) incurred in any transaction entered into for profit, or (c) arising from fires, storms, shipwreck or other casualty, or from theft. They must usually be evidenced by closed and completed transactions. In the case of the sale of assets the loss will be the difference between the cost thereof, less depreciation sustained since acquisition, or the fair market value as of March 1, 1913, if acquired before that date, less depreciation since sustained, and the price at which they were disposed of. * * * When the loss is claimed through the destruction of property by fire, flood or other casualty, the amount deductible will be the difference between the cost of the property or its fair market value as of March 1, 1913, if acquired before that date, and the salvage value thereof, after deducting from such cost or such value as of March 1, 1913, the amount, if any, which has been or should have been set aside and deducted in the current year and previous years from gross income on account of depreciation and which has not been paid out in making good the depreciation sustained. But the loss should be reduced by the amount of any insurance or other compensation received. * * *"

Section 214(a)(6) specifically covers a case of loss by fire not connected with trade or business, and section 214(a)(4) covers losses, if incurred in trade or business. It is argued that section 214(a)(1) embraces such portion of the restoration after the fire as would ordinarily have been for current expenses had no fire taken place. But we cannot say how far any of the sums paid out to restore the building would have been reason-

ably necessary had there been no fire, for no basis for a segregation of such items appears in the proof. It is accordingly impossible to allow the appellant anything under section 214(a)(1) as "ordinary and necessary expenses," even if sums of money spent in reconditioning a building after a fire could in any case be regarded as "ordinary and necessary expenses." But such items would seem to be classified by the statute as "losses" under (a)(4) or (a)(6) rather than as "ordinary and necessary expenses" under (a)(1). An attempt to determine what portion of the restitution would have been allowable as a current expense if the restitution had not been directly occasioned by the fire involves a complicated and theoretical calculation at best and seems to be rather in the face of statutory provisions aimed to cover broadly losses by "fires" and other "casualty." It is not necessary to say that a trifling damage such as one occasioned by a fire in a single room would necessarily come within (a)(4) or (a)(6), supra. Such a damage may well involve nothing more than an ordinary expense which it would be unreasonable to treat as due to a "casualty" within the meaning of the act or to regard as a capital expenditure for any purpose. But none of the losses occasioned by a fire like the one here which destroyed the roof and the top floor of the building and injured somewhat the lower portions can, in our opinion, be classed as an ordinary expense.

In other words, where a loss sufficient to be regarded as within the purview of (a)(4) or (a)(6) occurs, it is the occasion rather than the precise kind of reconditioning done that determines whether the particular outlay involves "ordinary and necessary expenses" or "losses." Any other view requires a determination in case of each serious fire which comes short of total destruction of just the extent of damage from that casualty which involves a capital expenditure to restore it and which involves a mere ordinary repair. We think the statute contemplates no such difficult classification, but places damage due to *casualty* in the sense we have used that term in the category of "losses." Moreover, a replacement of property due to damage from a devastating fire while perhaps a "necessary" expense cannot be regarded as an "ordinary" one. "Ordinary * * * expenses" in the most natural meaning of the words are those due to wear and tear and trifling accidental causes.

Assuming, then, that appellant's outlay, "not compensated for by insurance," amount-

ed to $41,142.14, was this a deductible loss within the meaning of the income tax act? As the property was merely restored and not improved, appellant certainly in one sense suffered a loss represented by the difference between the value of the buildings before and after the fire. Article 141 of Treasury Regulations 45, which was in force in 1920, provided that: " * * * When the loss is claimed through the destruction of property by fire * * * the amount deductible will be the difference between the cost of the property or its fair market value as of March 1, 1913, if acquired before that date, and the salvage value thereof, after deducting from such cost or such value as of March 1, 1913, the amount, if any, which has been or should have been set aside and deducted in the current year and previous years from gross income on account of depreciation and which has not been paid out in making good the depreciation sustained. But the loss should be reduced by the amount of any insurance or other compensation received. * * * " This regulation is in accordance with the whole trend of the income tax law in respect to sales of property. Section 202(a) of the Act of 1918 (40 Stat. 1060) provides:

"That for the purpose of ascertaining the gain derived or loss sustained from the sale or *other disposition* of property * * * the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value * * * as of that date * * *"

The act of 1921, Sections 202(b)(3), (d)(2), and 214(a)(12), 42 Stat. 230, 241, substantially re-enact the Treasury Regulations we have set forth.

It is true, as article 141 of the Regulations intimates, losses must usually be evidenced by closed transactions, but a fire damage, even though partial, if it results in a net loss of value at the time of the fire based on original cost is a closed transaction pro tanto which the statute allows the taxpayer to claim as a deduction.

In the present case there was no proof of a loss. The salvage value of the property after the fire was not shown, and if we should assume that it was the value before the fire, less the cost of reconditioning (or $225,000—$70,000), there remained damaged property worth $155,000, a sum far more than the value of $125,000 on March 1, 1913.

There was no attempt by the taxpayer to establish a loss by showing an original cost less annual depreciation greater than the

value of the property at the time of the fire in order to bring the case within such decisions as Goodrich v. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758; Walsh v. Brewster, 255 U. S. 536, 41 S. Ct. 392, 65 L. Ed. 762, and United States v. Flannery, 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865. We, therefore, have nothing but the value on March 1, 1913, as a basis for comparison with the value after fire loss, and, as already stated, utterly lack proof of the salvage value of the property.

In view of the proof, the taxpayer can claim no loss under the provisions of section 214, supra, due to his expenditure of $41,142.-14. But, in the event of a sale of the property, this expenditure would doubtless reduce any taxable profit pro tanto, because it has increased the cost of the building.

In Zimmern v. Commissioner, 28 F.(2d) 769, repairs to recondition a sunken barge were held deductible under section 214(a)(1) by the Circuit Court of Appeals of the Fifth Circuit. The court there followed Grant v. Hartford & New Haven R. R. Co., 93 U. S. 225, 23 L. Ed. 878. But that replacement was due to no casualty, and was treated as a current repair to keep railroad property up to condition. The questions as to whether section 214(a)(4), rather than section 214(a)(1), did not apply, and whether, if it did, there was any proof of loss, do not appear to have been discussed in Zimmern v. Commissioner, supra, in the opinion of the court.

It is contended on behalf of the Commissioner that there can be no deduction because of section 215(c), prohibiting deductions in respect of "any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made."

But this provision was designed to prevent double deductions. The amount spent on reconditioning could not add to annual charges for depreciation because it did not add to the value of the property. It does not, therefore, come within the terms of section 215(c).

We are of the opinion that the expenses of reconditioning the property were all losses to be deducted, if at all, under section 214(a)(4) or (a)(6) and that there has been no proof of loss within the meaning of that section of the income tax act.

The order of redetermination of the Board of Tax Appeals is affirmed.