## COMMISSIONER OF INTERNAL REVENUE v. BRIER HILL COLLIERIES.

## BRIER HILL COLLIERIES v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 5634, 5651.

Circuit Court of Appeals, Sixth Circuit.

June 9, 1931.

Andrew D. Sharpe, of Washington, D. C. (G. A. Youngquist, Atty. Gen., and Sewall Key, C. M. Charest, and Frank M. Thompson, all of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Frank F. Nesbit, of Washington, D. C., for Brier Hill Collieries.

Sidney P. Simpson, of New York City, amicus curiæ.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

These cases involve income and profit taxes of the Brier Hill Collieries, which owns and operates coal mines in Overton county, Tenn. In No. 5634 the Commissioner seeks a review of the decision of the Board of Tax Appeals allowing capital depletion at the rate of 10 cents per ton of coal mined. No. 5651 is an appeal by the taxpayer from the decision of the Board (1) excluding from invested capital a part of the property paid in to the taxpayer in exchange for its capital stock, and (2) holding that amounts expended for steel rails, mine cars, switches, and trolley wires for the mines were not deductible as operating expenses.

In case 5634, the Commissioner allowed depletion for the years 1918 to 1923, inclusive, at the rate of 3.1 cents per ton of coal mined. The Board of Tax Appeals concluded "from all the evidence submitted" that the rate should be 10 cents per ton of coal mined. The Commissioner contends that this conclusion of the Board is not supported by the evidence. Both parties agree that the capital value is to be determined as of March 1, 1913. The main witness as to value as of that date was C. D. Clark, an engineer of wide experience in appraising values of coal properties, who testified that some of the properties in the section where this property was situated were leased in 1913 for more than 10 cents per ton royalty and others in 1920 for 20 cents a ton and higher. The acreage here in question had been partially developed on March 1, 1913; spur tracks had been built; and the coal was above the

average in value. Clark thought that the property could have been leased at that time upon a royalty basis of 15 cents or 20 cents a ton. Other evidence fixed as nearly as possible the tonnage then in the property, as well as the probable length of time that it would require, under normal operations, to exhaust it.

It is of course true that the probable rental rate as of March 1, 1913, is not the measure of the depletion rate for subsequent years, since, even if the mines had been leased, the value of the coal in place would have to be arrived at by reducing the royalties to be received to their worth as of the basic date. Reineke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385. Lacking evidence of saleable value, the royalty rates at which the property could have been leased afford perhaps the most dependable basis for determining capital value. There is nothing in the record to indicate that the rates testified to by Clark were too high, and the Commissioner does not attack the decision of the Board upon the ground that there was error in reducing them to their value as of March 1, 1913. Whether the Board used them as the basis of its decision does not appear, but, in the absence of a showing that they were incorrect, the Board was justified in discounting them to the basic date and determining the value accordingly. Assuming that it did so, we find no reason for disturbing its finding.

■ Case No. 5651 involves taxes for 1918, 1919, and 1920. For each of those years the Commissioner and Board disallowed an item of $50,319.93 claimed by the taxpayer as a part of its invested capital. The claim was based on the following facts: The taxpayer was organized in 1904, and in October of that year issued its capital stock in exchange for the assets of the Crawford Coal & Iron Company, assuming its debts and liabilities. The assets of the Crawford Company consisted of coal and timber lands and also certain personal property used at its mines. The personal property, as carried on the books of the Crawford Company, exceeded the liabilities of that company by more than $50,000. In taking over the property, the taxpayer credited this excess to capital on its books. The Board disallowed it as a capital item. We reach a different conclusion. The Board has frequently held that the balance sheets of predecessor and successor corporations are evidence of asset values. Fidelity Storage & Warehouse Co., 2 B. T. A. 371; Munising

Motor Co., 1 B. T. A. 286; Northeastern Oil & Gas Co., 5 B. T. A. 332. Not only did the books of the Crawford Company show these values, but the same items at the same values were transferred to the books of the taxpayer upon the taking over of the properties. Nothing appears in the evidence from which it is to be inferred that the books of either company did not show, as they purported to do, the true value of the assets. In this situation we think the Board should have accepted the book values. Newton v. Consolidated Gas Co., 258 U. S. 165, 42 S. Ct. 264, 66 L. Ed. 538. Kings County Lighting Co. v. Nixon (D. C.) 268 F. 143.

■■ The other question presented in case 5651 relates to expenditures for steel rails, mine cars, switches, and trolley wires to be used in operating the mines. These expenditures were deducted from gross income by the taxpayer as expenses incurred in operating the mines. The Commissioner and the Board of Tax Appeals held that they were capital investments.

Section 234 (a) of the Revenue Act of 1918 (40 Stat. 1077) permits the deduction of ordinary and necessary expenses paid or incurred during the taxable year in carrying on the taxpayer's trade or business. It also makes allowance for exhaustion, wear, and tear of property used in the business, including obsolescence; and in the case of mines allows deductions for depletion or depreciation of improvements according to the peculiar conditions in each case, based upon cost, including cost of development not otherwise deducted. Section 215 (b), 40 Stat. 1069, provides generally that no deduction shall be allowed for "any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." Treasury Regulations 45, article 222, issued in 1920, states that "all expenditures for plant and equipment shall be charged to capital account recoverable through depreciation, while the mine is in the development stage," and thereafter "the cost of major items of plant and equipment shall be capitalized, but the cost of minor items of equipment and plant, necessary to maintain the normal output and the cost of replacement may be charged to current expense of operation."

The Board found that the mines reached their maximum capacity in August, 1918, and thereafter it was necessary to make the expenditures here in question in order to maintain normal output. Although it found that

the expenditures did not increase the productive capacity of the mines, it concluded that they were capital investments because they were made for equipment and improvements that would continue to be used beyond the taxable periods. It was also thought by the Board that, as the equipment enabled the taxpayer to produce coal more economically, it necessarily increased the value of the property. The taxpayer contends that, as the sole purpose of the expenditures was "to maintain the normal output," they must be regarded as current expenses, that they are to be so regarded, too, according to the correct interpretation of Article 222 of Regulations 45 of the Treasury Department, and that Congress, by re-enacting the applicable provisions of the act of 1918 without change while those regulations were in effect, has given the force and effect of law to such construction.

So far as the Treasury Regulations are concerned, the question is whether the expenditures were for "major items of plant and equipment" or "minor items" necessary to maintain normal output. We are not convinced that the Department, either in practice or by its regulations, had so construed the act of 1918 as to give color of congressional interpretation to the later enactments. As, however, the statute does not, and necessarily could not, define capital investments and operating expenses with sufficient particularity to make certain, in every case, whether an expenditure belongs to the one class or the other, it sometimes happens, as in this case, that the law is difficult of application. Were the case before us without exact precedent, we would hesitate to say that expenditures for equipment having a useful life of many years and enabling the owner to operate more economically were not capital investments; but it has been held in two cases substantially identical with this one—United States v. Roden Coal Co., 39 F.(2d) 425 (5 C. C. A.) and Marsh Fork Coal Co. v. Lucas, 42 F.(2d) 83 (4 C. C. A.)—that such expenditures are operating expenses. So far as we are advised, the question has not been decided differently by any other court, and, not having a settled conviction of error in the two decisions referred to, we conceive it to be our duty to follow them and reverse the decision of the Board on this point.

It follows that the order of the Board in case No. 5634 is affirmed, but the order in case No. 5651 is reversed, and the cause remanded for proceedings consistent herewith.