## PIONEER POLE & SHAFT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5616.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1932.

John Enrietto, of Washington, D. C. (William H. Thompson, Charles D. Hamel, and Hamel, Park & Saunders, all of Washington, D. C., on the brief), for petitioner.

Wm. Cutler Thompson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and John H. McEvers, C. M. Charest, and Stanley B. Pierson, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The Pioneer Pole & Shaft Company was organized as a New Jersey Corporation late in 1902, to combine or consolidate fourteen companies then actively engaged in the same or a kindred business as was thereafter carried on by the new corporation. It is conceded that a substantial value representing the good will of the constituent companies was then "paid in" for capital stock. In 1911 it was thought desirable to change the corporate domicile from New Jersey to Ohio. Accordingly a new corporation was organized under the laws of Ohio, which corporation took over all the assets and assumed all the liabilities of the New Jersey corporation. There was no change whatever in the capital or financial structure. Shares of stock of the Ohio corporation were exchanged, share for share, for those of like kind and par value of the New Jersey corporation. The Ohio corporation thereafter simply carried on the same business as that previously conducted by the New Jersey corporation, with the same capital, the same stockholders, the same officers, the same assets, the same liabilities, the same name, and the same established trade. In determining income and excess profits taxes for the fiscal year ending July 31, 1919, the Commissioner refused any allowance whatever for good will as an item of invested capital, basing his action upon the ground that "the cash value of good will received for stock of the corporation has not been substantiated." The action of the Commissioner was affirmed by the Board of Tax Appeals, and the present petition to review followed.

It is found as a fact by the Board that in January, 1903, an appraisement of the properties of the companies undergoing

consolidation was made. The aggregate value of such companies as going concerns was fixed by this appraisement at $2,883,450, and as payment of this sum the new corporation issued $1,416,600 of its preferred and $1,466,850 of its common stock. The findings of fact are also specific that "the preferred stock was issued for plant assets and the common stock was issued for alleged good will of the fourteen companies." If the invested capital of the petitioner is to be determined as of January, 1903, these findings bring the case, we think, within the doctrine announced by us in Rookwood Pottery Co. v. Commissioner (C. C. A.) 45 F.(2d) 43, 45, that the taxpayer had made out its case "when it put in proofs clearly and distinctly tending to show" the value of the intangible property bona fide paid in for stock or shares, which proofs "remained unchallenged by contrary proofs or by destructive analysis."

■ It is mildly suggested, rather than seriously urged, that the certainty of this proof of the actual cash value of the good will is destroyed by the fact that in 1915 the par value of the common stock was decreased from $100 to $25 per share, without change in the number of outstanding shares, and by the failure of the company in 1903 to carry good will upon its books at this definite valuation. Thus, it is intimated, by the very act of the company the sum of $1,466,850 has been admitted to be excessive, and the true cash value of the good will has not been shown. The good faith of the original appraisement, however, is not attacked, and we do not attribute to the change in capitalization greater effect than was attributed in the Rookwood Pottery Company Case to the act of entirely writing off good will. That which appeared wholly reasonable in 1903, and was then acted upon in good faith, is not rendered unreasonable by relation, as from the beginning, by an act of what later seemed prudent bookkeeping; that which at the time constituted the true invested capital is not to be subsequently decreased by write-offs, any more than by operating losses. Cf. Ralston Steel Car Co. v. Commissioner, 53 F.(2d) 948 (C. C. A. 6), decided November 3, 1931.

■ We come then to the issue upon which the case turned before the Board of Tax Appeals: Did the development of the fact that reincorporation in 1911 render worthless and ineffective the evidence of value of good will actually paid in for capital stock in 1903? We think that it did not. Tax statutes are to be liberally construed in favor of the taxpayer (U. S. v. Updike, 281 U. S. 489, 50 S. Ct. 367, 74 L. Ed. 984), and with regard to substance rather than to form. Eisner v. Macomber, 252 U. S. 189, 206, 211, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; U. S. v. Phellis, 257 U. S. 156, 168, 42 S. Ct. 63, 66 L. Ed. 180; Weiss v. Stearn, 265 U. S. 242, 253, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 175, 46 S. Ct. 449, 70 L. Ed. 886. Obviously, there are instances of reorganization in which, in substance as well as in form, the new corporation will not be regarded as substantially identical with the old. U. S. v. Phellis, supra, and Marr v. U. S., 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079, are such cases. On the other hand, such identity has been recognized, notwithstanding the creation of a new corporation, technically a distinct legal entity, to take over the properties of the old. Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520. The real distinction, we think, lies as much, or more, in whether there has been a change in the capital and financial structure of the corporations, as in whether the two are incorporated under the laws of the same or of different states. Substantial identity alone is required, and we are of the opinion that this was shown in the present case.

But were we wrong in the conclusion just reached, it would still seem obvious that the capital stock of the new corporation which was issued, share for share for the old, in payment for the assets of the old corporation, including the former good will in toto and the accumulated surplus, must be regarded as paid for by such assets. Conversely, such assets, including the good will and earned surplus, were then "bona fide paid in for stock or shares." The only change possible was that the "earned" surplus may then have become a "paid in" surplus; but the aggregate value of such assets was none the less the actual cost to the shareholders of the shares issued therefor. The New Jersey corporation earned substantial profits each year of its existence. The evidence of value of the good will in 1903 was strengthened, and the value more clearly justified, by the corporate experience between 1903 and 1911. This value remained in 1911. The words "invested capital" import "a laying out of money, or money's worth, * * * in acquiring something of permanent use in the business." La Belle Iron Works v. U. S., 256 U. S. 377, 388, 41 S. Ct. 528, 65 L. Ed. 998. This characteristic was quite as apparent in the 1911 as in the 1903 transaction.

Compare Commissioner v. Brier Hill Collieries, 50 F.(2d) 777, 778 (C. C. A. 6). To hold otherwise would be to support a technical legal fiction and to disregard what to all men would seem the true substance of the steps taken.

In view of the restrictions as to amount imposed by the Revenue Act of 1918 (chapter 18, 40 Stat. 1057, 1092, § 326), the petitioner claimed the right to include in invested capital only $366,712.50, and is now limited to such amount. The decision of the Board of Tax Appeals is reversed and the cause is remanded for recalculation of the tax.