FAHS, Collector of Internal Revenue, v.
FLORIDA MACHINE & FOUNDRY CO.
No. 12212.

Circuit Court of Appeals, Fifth Circuit.
July 6, 1948.

Leland T. Atherton and George A. Stinson, Sp. Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and Edith House, Asst. U. S. Atty., of Jacksonville, Fla., for appellant.

John W. Donahoo and William T. Rogers, both of Jacksonville, Fla., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Appellee, Florida Machine and Foundry Company, filed suit to recover additional income and excess profits taxes, aggregating $19,089.44, paid for the years 1941 and 1942 under protest. From a judgment for appellee taxpayer, the Collector takes this appeal.

The only question presented is the proper cost basis to be used by taxpayer in computing gain or loss on the sale of certain land it owned in 1941, and in determining taxpayer's equity invested capital for the years 1941 and 1942.

Title 26 U.S.C.A.Int.Rev.Code, § 112(b) (5), provides:

"Sec. 112. Recognition of gain or loss—
* * *

"(b) Exchanges solely in kind—* * *
"(5) Transfer to corporation controlled by transferor.

"No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; * * *."

Section 112(h) defines the term "control", as used in the above quoted provision, as follows:

" * * * Definition of control. As used in this section the term 'control' means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation. * * *"

Section 718(a) (2) of the Code, 26 U.S. C.A.Int.Rev.Code, § 718(a) (2), requires that property paid in for stock be included in equity invested capital in the amount of its basis for determining loss upon sale or exchange. The basis to be used for property acquired by a corporation after December 31, 1920, through the issuance of its stock for property in accordance with Section 112(b) (5), above, is the same as it would be in the hands of the transferor. Section 113(a) (8), Internal Revenue Code, Title 26 U.S.C.A.Int.Rev.Code, § 113(a) (8). If, however, the issuance of the stock for property is not governed by Section 112(b) (5), the taxpayer's basis is the cost to it of such property, or the fair market value of the property on the date of acquisition. Section 113(a), 26 U.S.C.A. Int.Rev.Code, § 113(a).

The evidence reveals that for some years prior to 1912, Franklin G. Russell, Senior, as sole owner, operated a business known as Florida Machine Works on Riverside Avenue in Jacksonville, Florida. On May 31, 1912, he purchased a tract of land bordering on West Church Street in Jacksonville, to which location the plant was later moved.

About the year 1920, it was shown that the Senior Mr. Russell, who had little technical education for foundry and machine shop work, discussed with his son, Franklin G. Russell, Junior, the possibility of the son eventually succeeding him in the business. The son had graduated from college in 1916 with a degree in mechanical engineering and, with the exception of about two years spent as a soldier in World War I, had served since that time as an apprentice in the various departments of his father's plant, later becoming assistant manager. When the location of the business was changed from Riverside Avenue to West Church Street, the son himself had planned and laid out the new plant installations. In 1921 the father and son entered into an agreement whereby the son would eventually receive a one-half interest in the business, if he remained with it and continued to operate the plant. In pursuance of this agreement, the Florida Machine and Foundry Company, taxpayer, was organized and incorporated on July 16, 1924. At the organization meeting on that date, the Senior Russell conveyed to the corporation all of the assets of the business which he then owned individually, including the tract of land in question, for stock in the corporation, with the shares thereof to be issued directly to himself, his son, and one share each to three other persons. The father received 1181 shares and his son 1176 shares, the father thereby retaining only a bare majority of the stock issued.

In 1941, the corporation sold a parcel of the land on West Church Street for $15,000. The March 1, 1913, value of this tract was $7,522.60. On July 16, 1924, the date taxpayer corporation was organized, the fair market value of the tract sold was $13,164.55.

In its 1941 return, the taxpayer claimed a loss on the above sale in the sum of $11,270, using as its basis of value for the land sold, the amount of $26,270, which was the proportionate fair market value of the land sold as compared with the fair market value of the entire tract as of July 16, 1924, the date of organization of the corporation and acquisition of the land by taxpayer. The Commissioner denied the validity of the basis used, on the ground that the transfer to the corporation on

July 16, 1924, was really a non-taxable exchange of property for stock, as described in Section 112(b) (5) of the Code, and ruled that, for the purpose of computing taxpayer's gain or loss under Sec. 113(a) (8), the proper basis of value was the March 1, 1913 value in the hands of the transferor, Franklin G. Russell, Senior, or $7,824.53, so that instead of a loss of $11,270, as claimed by taxpayer, there was a taxable gain of $7,175.47; he further required the use of the same basis in computing taxpayer's equity invested capital under Sec. 718(a) (2), for the years 1941 and 1942.

We are of opinion the district court's finding that Franklin Russell, Senior, was not in "control" of taxpayer corporation "immediately after the transfer" on July 16, 1924, and therefore, that Section 112(b) (5) did not apply, is abundantly supported by the evidence.[1] 26 U.S.C.A. Int.Rev.Code, §§ 112(b) (5), 112 (h); Heberlein v. U. S., 2 Cir., 105 F.2d 965; Bassick v. Commissioner, 2 Cir., 85 F.2d 8; Hazeltine Corporation v. Commissioner, 3 Cir., 89 F.2d 513.

Appellant's contention that the son, Franklin Russell, Junior, by virtue of the agreement with his father in 1921, acquired an equitable one-half interest in the land involved, which thereafter placed him and his father, as joint transferors, in "control" of taxpayer immediately after the transfer, is not borne out by the evidence. We further find no merit in the argument that taxpayer should be required to use the basis of its transferor, Franklin G. Russell, Senior, because of the latter's failure to report the transfer in 1924. There can be no estoppel against taxpayer for the act of its transferor, who was not in control of taxpayer corporation immediately after the transfer, and who was shown to have acted in good faith. Cf. Portland Oil Co. v. Commissioner, 1 Cir., 109 F.2d 479; Orange Securities Corporation v. Commissioner, 5 Cir., 131 F. 2d 662.

It follows that the proper basis for the land in question is its fair market value when acquired by taxpayer corporation on July 16, 1924.

We find no reversible error in the record, and the judgment is therefore affirmed.

---

[1] The district court found:

" * * * Obviously, Mr. Russell, Senior, owned far less than 80% of taxpayer's capital stock according to the stock register. There is no basis in the evidence to find that the issue of stock on July 16, 1924, and the interests in the corporation thereby represented, were other than bona fide. There is no evidence of subterfuge or evasion,—no evidence that Mr. Russell sought to conceal a personal control of the corporation by formally placing one-half of the capital stock in his son's name. To the contrary, it appears that the entire transaction was regular and in good faith, for the declared purpose of bringing his son into the business as a one-half owner, so that the son could and would carry on this long-standing family business after the retirement of his father, who was then getting along in years. At the time of this transaction, the son was a mature and experienced man, 31 years old, fully competent by education and experience to take over and manage the responsibilities of the business, which he did. The uncontradicted evidence is that the son was the absolute owner of the stock issued to him; that he exercised all the privileges of ownership thereof, and paid income tax on the dividends therefrom. * * * "