TICKET OFFICE EQUIPMENT CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31072. Promulgated April 30, 1953.

*Richard W. Wilson, Esq.*, for the petitioner.
*Arthur L. Nims, Esq.*, for the respondent.

## OPINION.

Opper, *Judge:* The first issue depends upon the amount to be determined as petitioner's invested capital for excess profits tax purposes. The sole controversy involves the amount to be attributed to the so-called Sunvent patent. The record is silent as to any value attributable to it at the time petitioner was organized and indeed the indications are that it was worth considerably less than the figure allowed by respondent, if not entirely worthless. Since the patent was transferred to petitioner in exchange for the issuance of its stock, the value of the stock and hence of the patent would be determinable from the fair market value of the patent at that time, there being no other evidence of the value of the stock. *Estate of Isadore L. Myers*, 1 T. C. 100, 111.

The only other possibility would be the assumption that under Internal Revenue Code, section 113, petitioner would carry over the basis of its transferor. This would be permissible under section 113 (a) (8) only if petitioner's organization constituted a transaction in which gain or loss was nonrecognizable within section 112 (b) (5) or if the property was paid in as surplus.[1] The former is impossible

---

[1] Internal Revenue Code, sec. 113:

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

    \*     \*     \*     \*     \*     \*     \*

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

    (A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) \* \* \*, or

    (B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor \* \* \*

since Ruscher who was the transferor received less than half of petitioner's stock and hence under section 112 (h) was not "in control of the corporation" immediately after the exchange. *Fahs* v. *Florida Machine & Foundry Co.*, (C. A. 5) 168 F. 2d 957; see *Muskegon Motor Specialties Co.*, 45 B. T. A. 551, affd. (C. A. 6) 134 F. 2d 904, certiorari denied 320 U. S. 741. And the latter brings us back to the proposition that without valuing the patent above the figure determined by respondent, the total assets received were worth less than the par value of the total stock,[2] and accordingly left no room for any contribution to surplus since there was no surplus.[3] We must accordingly conclude that whatever the transferor's basis may have been, petitioner has failed to show that respondent's determination on the first issue is erroneous.

The second and third questions are disposed of by our findings. On the second we have found as a fact that the salaries paid by petitioner during the years in controversy were reasonable under all the circumstances. It is of course impossible to measure precisely the value of services of corporate officers, especially where the sums involved are blanketed under one undivided disallowance.[4] But we think enough has been shown to carry petitioner's burden that in the light of all the facts the total salaries paid were not unreasonable. *H. V. Greene Co.*, 5 B. T. A. 442.

We have also found as a fact that petitioner did not abandon prior to the end of the tax year a piece of machinery, the cost of which was claimed as a deduction in full. The property admittedly had a value at least for salvage and perhaps something in excess of that amount,[5] and for that reason its disposal was evidently postponed beyond the instant years. Respondent has permitted the deduction of depreciation and this in our view is the limit to which petitioner is entitled.

---

[2] *Assets Transferred*:

| | |
|---|---:|
| Machinery, tools, equipment | $9,563.32 |
| Patents, less amortization | 57.91 |
| Inventories | 560.00 |
| Sunvent patent | 5,128.26 |
| | **$15,309.49** |

Stock Issued:

262½ shares at $100 par value per share ___ $26,250.00

[3] * * * Surplus has been well defined as follows in *Edwards* v. *Douglas*, 269 U. S. 204, 214 * * * Brandeis J.: "* * * The surplus account represents the net assets of a corporation in excess of all liabilities including its capital stock. This surplus may be "paid-in surplus," as where the stock is issued at a price above par * * *" *Randall* v. *Bailey, et al.*, (N. Y.) 43 N. E. 2d 43, 48–49.

[4] For 1944 respondent determined that "salaries in the amount of $44,000.00 are allowable" in place of a claimed amount of $45,899.25. For 1945 he allowed $45,000 in place of $46,233.75.

[5] Petitioner's president testified as follows:
Q. Well, you didn't give this particular machine to the dealer?
A. No.
Q. Why didn't you do that?
A. Well, for no reason at all, but there is a machine that has a lot more, something to it than just scrap. I don't know.

A group of issues arises by reason of damage and partial destruction to petitioner's plant by fire. As to the first assertion of error there seems now to be no disagreement between the parties, petitioner conceding that it is liable for a taxable gain on the insurance paid for the building in the amount of $2,524.27 represented by the difference between the insurance received by it and the cost of replacement of the property. And notwithstanding respondent's suggestions to the contrary this gain, as petitioner agrees, is wholly recognizable under section 112 (f).

A second subissue involves amounts expended for cleaning up and removing debris, for temporary electrical installation, and other emergency activities to place the plant in temporary running order, undertaken by petitioner without regard to the repair and permanent replacement of its facilities. As to these items, we conclude that they were ordinary and necessary expenses and not capital items of a permanent nature. *Illinois Merchants Trust Co.*, 4 B. T. A. 103; *Brier Hill Collieries* v. *Commissioner*, (C. A. 6) 50 F. 2d 777; cf. *Hubinger* v. *Commissioner* (C. A. 2), 36 F. 2d 724, certiorari denied 281 U. S. 741.

A third set of expenditures was disallowed as a deduction because respondent considered them to be capital items. We have found as a fact that they were of a temporary nature consisting as they did of painting, filling cracks, and the making good of similar recurrent damage, and they are accordingly deductible as ordinary and necessary business expense. *Salo Auerbach*, 2 B. T. A. 67, acq. IV-2 C. B. 1.

Respondent's proposed addition to income because the insurance collected for fire damage to the contents of the building was compensation for an inventory loss taken in the course of petitioner's customary inventory accounting lacks persuasiveness. Petitioner suffered a loss of personal property by fire covering a number of miscellaneous items including inventory. It is apparently conceded that although it received some insurance, the entire compensation so represented was expended in replacement of other damaged and destroyed articles. And no income was realized on the unreplaced inventory. Petitioner had a loss of property including inventory which was not compensated for because the insurance fund was inadequate to cover all of the damage. It is not essential that insurance be allocated in any specific manner to individual items destroyed. *Massillon-Cleveland-Akron Sign Co.*, 15 T. C. 79. We conclude that petitioner suffered a total loss in the amount claimed by it which was in excess of the insurance received, hence was not compensated for by insurance or otherwise, and hence was wholly deductible, without regard to the insurance fund exhausted for other purposes.

Finally, an item claimed by petitioner as the cost of hiring attorneys and adjusters to collect its insurance claim has been disallowed as not an ordinary and necessary business expense. We disagree. The purpose of the expenditure was to collect a sum of money, and the requirement arose in the ordinary course of petitioner's business. The item involved was a claim for money damages; the dispute did not concern title to a capital asset nor an additional expenditure undertaken to improve or increase the value of any capital item then owned by petitioner. *Alexander Sprunt & Son, Inc.* v. *Commissioner*, (C. A. 4) 64 F. 2d 424, 428. Even in condemnation proceedings, comparable perhaps to a forced sale, expenses of successful defense are deductible as ordinary and necessary. *L. B. Reakirt*, 29 B. T. A. 1296, affirmed per curiam (C. A. 6) 84 F. 2d 996. Much stronger is a case like the present where the loss if it occurred would be due to a casualty [6] and have no resemblance to a sale, voluntary or otherwise. Nor, although the occurrence of a fire may be an extraordinary event, is the payment of such amounts other than ordinary when a fire has occurred. See *Kornhauser* v. *United States*, 276 U. S. 145. We regard the items in question as deductible in full as ordinary and necessary business expense.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[6] Section 112 (f) deals with the recognition of gain upon an involuntary conversion. It does not on the one hand provide for nonrecognition of losses, see H. R. 798, 82d Cong., 1st Sess., p. 2, nor on the other does it concern the type of deduction which may be involved. Accordingly, while such an involuntary conversion as a sale in condemnation proceedings might partake of the nature of a capital transaction and give rise to a capital gain, a casualty loss such as the destruction by fire present here gives rise to an ordinary loss deductible and recognizable in full. E. g., *Harris Hardwood Co.*, 8 T. C. 874; *Greenwood Packing Plant*, 46 B. T. A. 430, reversed (other grounds), (C. A. 4) 131 F. 2d 787. It would be anomalous in the extreme if expenses paid to reduce the amount of such an ordinary loss were not themselves deductible in full, as partaking of the nature of the loss to which they relate. See *Arrowsmith* v. *Commissioner*, 344 U. S. 6 ; cf. *H. C. Naylor*, 17 T. C. 959, reversed (C. A. 5) 203 F. 2d 346.