**Glenn D. WOOD, et al.**

v.

**UNITED STATES of America.**

Civ. A. No. 87–775.

United States District Court,
E.D. Louisiana.

March 3, 1988.

Hurley and Hoffmann, Anita M. Warner, New Orleans, La., Arent, Fox, Kintner, Plotkin, & Kahn, John Harllee, Jr., Washington, D.C., for plaintiffs.

Enid A. Francis, Asst. U.S. Atty., New Orleans, La., Paul M. Predmore, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

WICKER, District Judge.

This matter came before the Court on cross motions for summary judgment.

This is a tax refund action brought by the plaintiffs to contest a determination made by the Internal Revenue Service (IRS) that plaintiff had unreported taxable income in the years 1978 and 1979 resulting from his participation in the importation of marijuana.

The parties have stipulated to the following:

(1) At all times pertinent hereto, Glenn D. Wood was a resident of the Eastern District of Louisiana.

(2) During the calendar years 1978 and 1979, Glenn D. Wood rendered services in connection with the importation of marijuana (hereinafter contraband transactions) for which he received a commission of roughly $2.00 per pound of marijuana handled.

(3) In the calendar year 1978, Glenn D. Wood rendered services to Donald Koehl, another member of the contraband transactions, and it was agreed that Glenn Wood would received $168,000 in total gross payment from these transactions. Glenn D. Wood was not involved in any other contraband transactions in 1978 and received no other money from such sources in that year.

(4) In the calendar year 1979, Glenn D. Wood rendered services to Donald Koehl, another member of the contraband transactions, and it was agreed that Wood would receive $432,000 in total gross payments from these contraband transactions. Glenn D. Wood was not involved in any other contraband transactions in 1979 and received no other money from such sources in that year.

(5) Koehl caused the $600,000 received by Wood for the contraband transactions in 1978 and 1979 to be deposited into a Grand Cayman Islands Trust Account.

(6) The money deposited into the Grand Cayman Islands Trust Account from Wood's contraband transactions was ultimately transferred to Fiberchem International, N.V., a Dutch Antilles foreign corporation.

(7) In June, 1980, Fiberchem International, N.V. purported to loan money, including the $600,000 allocated to Wood for his participation in the 1978 and 1979 contraband transactions, to Basalt Associates and Basalt Development Company for the acquisition and development of a planned unit development of real estate to be known as Basalt Colorado.

(8) Basalt Associates was a Colorado partnership formed in 1978. The partnership agreement showed Glenn Wood with a 33⅓% ownership interest in this partnership.

(9) Basalt Development Company was a Colorado partnership formed in 1979. Basalt Associates had a 90% ownership interest in this partnership.

(10) Glenn D. Wood originally began cooperating with the government in October, 1982. On June 2, 1983, Wood was indicted in a two count indictment charging narcotics violations in *United States v. Glenn D. Wood*, Criminal No. 83–277, Section G (E.D.

La.). These charges include all of Wood's 1978 and 1979 contraband transactions.

(11) Wood entered into a plea agreement with the United States Attorney's office for the Eastern District of Louisiana. In a letter dated July 13, 1983, the terms of Wood's plea agreement were outlined. A true and correct copy of this July 13, 1983 letter is attached hereto as Def. Exhibit A.

(12) On July 26, 1983, Wood entered a guilty plea to a superseding two-count bill of information charging conspiracy to import marijuana and importation of marijuana.

(13) On October 26, 1983, Wood was sentenced to serve four years in a federal penitentiary and to pay a $30,000 fine. He served his sentence and has subsequently been released and has paid this fine.

(14) On May 31, 1984, Wood executed a Counter Letter in Lieu of Forfeiture Proceeding under 21 U.S.C. § 881. A true and correct copy of this Counter Letter is attached hereto as Def. Exhibit B. The promissory note and assignment effecting the transfer are attached hereto as Def. Exhibits C and D.

(15) On May 31, 1984, the Basalt Associates' property was turned over to the United States.

(16) Wood timely filed individual income tax returns for the tax years 1978 and 1979 and timely paid the taxes due as shown thereon in the amounts of $33,079 and $27,-679, respectively.

(17) Wood subsequently amended his 1978 and 1979 individual income tax returns and disclaimed certain losses from Basalt Associates which had been improperly reported on the returns as originally filed. These amendments resulted in an increase in tax for the 1978 tax year in the amount of $11,426 and an increase in the 1979 tax year in the amount of $12,608. These amounts were timely paid.

(18) In 1985, the Internal Revenue Service commenced an audit of Wood's 1978 and 1979 individual income tax returns and determined that Wood had not properly reported his receipt of $600,000 from the contraband transactions. Wood cooperated with the Service in this audit.

(19) On February 11, 1985, Wood signed Form 870, a Waiver of Restrictions on Assessment and Collection of Deficiency and Tax and Acceptance of Assessment, whereby he consented to the assessment and collection of the amount of tax and penalty shown below:

| TAX YEAR | TAX | FRAUD PENALTY |
|---|---|---|
| 1978 | $ 90,966 | $ 45,483 |
| 1979 | $218,545 | $109,273 |

(20) On April 22, 1985, the IRS sent Wood a statement of tax due as shown below:

| TAX YEAR | TAX | PENALTY | INTEREST |
|---|---|---|---|
| 1978 | $ 90,966 | $ 45,483 | $ 85,892.83 |
| 1979 | $218,545 | $109,273 | $185,356.70 |

These amounts were paid by Wood.

(21) Administrative claims for refunds were timely filed by Wood on February 7, 1986. (See attached Def. Exhibit E).

(22) Wood's administrative refund claims were duly denied by the Internal Revenue Service and this refund suit ensued.

■ The issue before the Court is whether or not the plaintiff taxpayer must pay income taxes on income received from illegal contraband activities even though all the proceeds from the illegal transactions are forfeited by the taxpayer to the government.

■ It is clear that gains from illegal activities are just as taxable as gains from legal activities. Section 61 of the Internal Revenue Code defines gross income as "all income from whatever source derived." *Helvering v. Clifford*, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955); *Rutkin v. United States*, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833 (1952).

It is now well-settled that gains from unlawful activities are included within the term "gross income." *James v. U.S.*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (overruling *Comm. v. Wilcox*, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946)).

Plaintiffs do not dispute the law contained in the above cited cases, however

they do contend this case is distinguishable because the proceeds in this case were forfeited to the government. The forfeiture statutes specifically state that the wrongdoer does not possess any property rights in the forfeited property. 21 U.S.C. § 881. The government's recognition of its "true ownership" and beneficial right" in and to the $600,000 stems from the long-settled judicial doctrine known as the "taint" theory, which the United States Supreme Court explained in the case of *U.S. v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890).

By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed, and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith.

*Stowell, supra,* at 16–17, 10 S.Ct. at 247.

Notwithstanding, the government argues and the Court agrees that the fact that plaintiff enjoyed complete dominion and control over the money between 1978 to 1984, makes the money taxable income. Wood used the money to invest in a real estate partnership in which he acquired a one-third interest; he had complete dominion and control over the funds.

■ Although neither the plaintiff nor the government could offer any law involving forfeited money that was still subjected to income tax, one who is in possession of stolen money has to pay taxes on it even though the true owner could claim it at any time. *James, supra.* Since the government expects the earner to pay taxes on embezzled property, surely it would require the wrongdoer to pay taxes on illegal gains which were forfeited to the government. See *James, supra; North American Oil Consolidated v. Burnet,* 286 U.S. 417, 52

S.Ct. 613, 76 L.Ed. 1197 (1932); *United States v. Lewis,* 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951).

Plaintiff's reliance on the case of *Eisner v. Macomber,* 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920) in which the Supreme Court stated that one does not have taxable income when he has received "nothing for his separate use and benefit" is misplaced. In this case plaintiff had control over the $600,000 for approximately 6 years. If plaintiff had spent the $600,000 the government would have had nothing to seize and plaintiff would have had nothing to forfeit. However, that was not the case.

The forfeiture statute involved here was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970. This statute was designed to give extra help to the fight against illegal drug trafficking.

■ Plaintiff's contention that the government is judicially estopped or precluded from enforcing the payment of income taxes by the plaintiff on the money they forfeited is without merit.

■ Next, plaintiff argues that the taxes should be disallowed because 1) they would violate the consistency requirement of the Fifth Amendment due process clause and 2) there would be an excessive fine prohibited by the Eighth Amendment. The plea agreement between Wood and the United States is quite clear. It specifically states that the forfeiture of the Basalt property, "in no way affects the government's rights to proceed civilly against [Wood] in matters under the jurisdiction of the Internal Revenue Service." (See Stipulation, Def. Exhibit A)

■ The Court finds that plaintiffs' Eighth Amendment argument is also without merit. A suit for a tax refund must be based upon a previously filed claim which sets forth in detail the grounds thereof and facts sufficient to apprise the Commissioner of the Internal Revenue Service of the exact basis for the claim. *United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). Anything not raised in the administrative claim for

refund cannot be raised later in a suit for refund. See *Alabama By-Products v. Patterson*, 258 F.2d 892, 900 (5th Cir.1958), *cert. denied*, 358 U.S. 390, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959); *Mallette Bros. Const. Co., Inc. v. United States*, 695 F.2d 145 (5th Cir.1983). Since plaintiffs never raised their Eighth Amendment argument in their prior administrative claim, they cannot raise it now.

The next issue before the Court is if the forfeited illegal proceeds are taxable income, does the plaintiff deserve an offsetting expense or lost deduction under sections 162(a), 165(a) and (c)(1), or under section 1341.

■ It is clear that the forfeited money is not an ordinary and necessary business expense under § 162(a). *Holt v. Commissioner*, 69 T.C. 75 (1977), *aff'd per curiam*, 611 F.2d 1160 (5th Cir.1980); *Holmes v. Commissioner*, 69 T.C. 114 (1977). The forfeiture of the money resulted in a loss, not an expense:

> The distinction between losses and expenses has generally been regarded as self-evident. See 4AJ. Mertens, Law of Federal Income Taxation, sec. 25.15 (1972 rev.). The distinction is found primarily in the nature and occasion of the expenditure. See *Hubinger v. Commissioner*, 36 F.2d 724, 726 (2nd Cir.1929), *cert. denied*, 281 U.S. 741 [50 S.Ct. 347, 74 L.Ed. 1155] (1930). For example, in *United States v. Winters*, 261 F.2d 675 (10th Cir.1958), liquor used to entertain clients was presumptively treated as an expense item; while in *Fuller v. Commissioner*, 213 F.2d 102 (10th Cir.1954, affg. 20 T.C. 308 (1953)), liquor confiscated by authori-

ties in a dry State was presumed to be a loss item. See also *Richey v. Commissioner*, 33 T.C. 272 (1959) (theft of $15,-000 cash in a scheme to counterfeit treated as a *loss item*); *Levy v. Commissioner*, 30 T.C. 1315, 1330 (1958) (amounts paid for rights to a story outline, which were subsequently abandoned, treated as *a loss, not an expense item*).

*Holt, supra,* at 78.

■ The case of *McKinney v. United States*, 574 F.2d 1240 (5th Cir.1978), makes it very clear that § 1341[1] cannot be used as the authority to give this plaintiff a deduction for the loss. See also, Rev. Rul. 65–254, 1965–2 C.B. 50.

■ The forfeited money is properly classified as a loss under section 165. *Holt, supra;* Rev.Rul. 65–254, 1965–2 C.B. 50. See also *Holmes, supra.*

> Section 165(a) allows a deduction for 'any loss sustained during the taxable year and not compensated for by insurance or otherwise.' In the case of an individual, the deduction is limited to losses incurred in the taxpayer's trade or business or in any transaction entered into for a profit and to certain casualty losses. Section 165(c).

*Holt, supra,* at 79.

However, the loss must be disallowed due to the "sharply defined national policy against the possession and sale of marijuana." *Holmes, supra,* at 117. See *Holt, supra,* at 80, and 26 U.S.C. § 280E. A loss deduction will not be allowed where the deduction would frustrate a sharply defined National or State policy. *Holt, supra; Holmes, supra; Fuller, supra; Mazzei, supra;* and *Richey, supra.*

---

**1.** Since 1341 provides in relevant part as follows:

(a) *General Rule —If—*

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenues laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

The primary purpose of forfeitures such as the one in this case is to cripple illegal drug trafficking and narcotics activities by depriving narcotics peddlers of the things necessary to carry out their trade. See *Holt, supra,* and *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H. 1974). "It would clearly be contrary to public policy to allow a deduction for such forfeitures." *Holt, supra,* at 80.

In view of the above and foregoing, motion of the United States for summary judgment dismissing plaintiffs complaint is GRANTED and motion of plaintiff for summary judgment is DENIED.