107 T.C. No. 3


UNITED STATES TAX COURT


IVAN A. JASKO AND JUDITH L. JASKO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5553-95.                    Filed August 20, 1996.


        Ps' principal residence was destroyed by fire.
They recovered insurance proceeds based on replacement
cost, resulting in a gain.  Ps incurred legal fees in
obtaining recovery of those proceeds and claimed a
deduction for the amount of those fees paid during the
taxable year.  Ps assert that the insurance policy was
held for the production of income so that the deduction
is allowable under sec. 212(1), I.R.C.  <u>Held</u>, under the
origin of claim doctrine, Ps' residence was the source
of their gain and the legal fees represented capital
expenditures constituting a reduction in their gain and
not currently deductible under sec. 212(1), I.R.C.


<u>L. Randolph Harris</u>, for petitioners.

<u>Allan D. Hill</u>, for respondent.

OPINION

TANNENWALD, Judge:  Respondent determined a deficiency in petitioners' 1992 Federal income tax in the amount of $6,225. The issue is whether petitioners may deduct legal fees paid during 1992 and incurred as a result of a dispute with their insurance carrier over the replacement cost of their residence, which had been destroyed by fire.

All section references are to the Internal Revenue Code in effect for the year in issue.

All the facts have been stipulated.  The stipulation of facts and attached exhibits are incorporated herein by this reference.

At the time their petition was filed, petitioners resided in Piedmont, California.

On October 20, 1991, petitioners' then principal residence in Oakland, California, (the Oakland Hills residence) was destroyed by a firestorm.  Petitioners had lived in that residence continuously from the time they purchased it in 1967 until its destruction.  The residence was not held either for rental or sale during 1991.

At the time of its destruction, the residence and its contents were insured against fire loss by Republic Insurance Company (Republic).  The insurance policy provided that, in the event of a loss, petitioners were to receive the replacement cost of the residence.

On November 20, 1991, Republic made an interim payment to petitioners in an amount based on its adjuster's determination that the actual cash value of the home was $110 per square foot.

During 1991, petitioners engaged the services of McInerney & Dillon, P.C., Attorneys at Law (McInerney & Dillon), to resolve a conflict with Republic as to replacement cost. During 1991, petitioners also hired a firm to draw plans for their home and to estimate the replacement cost of the Oakland Hills residence. Such replacement cost was estimated to be $921,994.

On September 16, 1992, Republic increased its estimate of replacement cost to $200 per square foot and made a further payment to petitioners based on this estimate.

The terms of the Republic policy provided for a form of arbitration in the event of a dispute over the replacement cost of insured property. Pursuant to that procedure, petitioners and Republic each chose an appraiser, and the two appraisers chose an umpire. An appraisal hearing ensued over replacement cost, and a decision was reached that the replacement cost of the home was $825,000. During September 1993, Republic issued its check in full satisfaction of the remaining balance due upon petitioners' insurance claim.

In pursuing their claim with Republic, petitioners incurred legal fees with McInerney & Dillon of $71,044.61 during 1991, 1992, and 1993. Petitioners paid $25,000 of that amount during

1992, which they claimed as a miscellaneous deduction on their 1992 return.

At the outset, we note that we have no direct evidence that petitioners realized taxable gain, i.e., an excess of the insurance proceeds over cost, from their receipt of replacement cost under the insurance policy. Sec. 1033(a)(2); see <u>Central Tablet Manufacturing Co. v. United States</u>, 417 U.S. 673, 676 (1974); <u>Tobias v. Commissioner</u>, 40 T.C. 84, 95 (1963). However, neither party has suggested that a gain is not involved herein, and we think that the existence of a gain is a permissible premise upon which to base our analysis and decision herein.[1]

The issue before us is whether petitioners are entitled to deduct the $25,000 legal fees under section 212(1) which provides in pertinent part:

> In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year--
>
> (1) for the production or collection of income;

Respondent contends that petitioners' home was not held for the production of income and, thus, the legal fees incurred by petitioners were incurred to recover a loss, not for the production of income, and are therefore not deductible.

---

[1] No gain was reported on petitioners' 1992 return based on the payment received in that year. It appears that petitioners were waiting until the expiration of the applicable period in which to replace the residence without current recognition of gain. See sec. 1033(a)(2).

Petitioners concede that their residence was not held for the production of income but contend that the insurance policy should be separated from the ownership of the residence and that, in this context, their expenses to recover full replacement cost of their residence fall within the purview of section 212(1).

The initial element in determining deductibility is the application of the "origin of the claim" doctrine articulated by the Supreme Court in United States v. Gilmore, 372 U.S. 39 (1963), and applied in Woodward v. Commissioner, 397 U.S. 572 (1970), and United States v. Hilton Hotels Corp., 397 U.S. 580 (1970).

We are not prepared to accept petitioners' argument that we separate the insurance policy and the dispute thereunder from petitioners' ownership of the residence, which was concededly a capital asset not held for the production of income. The policy was designed to reimburse petitioners against economic loss arising from the occurrence of defined contingencies, represented by the amount necessary to replace the residence. See, e.g., Allied Fidelity Corp. v. Commissioner, 66 T.C. 1068, 1074 (1976), affd. 572 F.2d 1190 (7th Cir. 1978). But for the residence and the fire, the insurance policy would be meaningless. Under such circumstances, the residence is the origin of the situation that caused petitioners to incur the legal fees. Compare Wagner v. Commissioner, 78 T.C. 910 (1982), where we refused to separate a lawsuit seeking adjustment of the purchase price of stock from

the earlier sale of the stock.  See also <u>Mosby v. Commissioner</u>, 86 T.C. 190, 198 (1986); cf. <u>Neely v. Commissioner</u>, 85 T.C. 934, 954-955 (1985).[2]  That the insurance proceeds produced a gain in and of itself is insufficient to require a different conclusion. The existence of that gain, however, raises the question of how the legal fees should be treated.

It is well established that expenses that are incurred in either the acquisition or disposition of a capital asset are nondeductible capital expenditures.  Sec. 263; see <u>Wagner v. Commissioner</u>, <u>supra</u> at 915-916.  The destruction of petitioners' residence by the firestorm in effect constituted a disposition of the residence in return for payment of the proceeds of the insurance.  In this context, the treatment of the legal fees in condemnation cases provides a useful analogy.  A property owner's expenses incurred to increase a condemnation award are nondeductible capital expenditures under section 263 that serve to reduce the amount of the taxable gain.  <u>Mosby v. Commissioner</u>, <u>supra</u> at 196-197; <u>Casalina Corp. v. Commissioner</u>, 60 T.C. 694, 703 (1973), affd. per curiam 511 F.2d 1162 (4th Cir. 1975).  We think that petitioners' legal expenses should be accorded the same treatment since destruction is in a very real sense the equivalent of an involuntary conversion; in either case, the taxpayer loses the property.  We note that our treatment of the

---

[2]  See also <u>Myers v. Commissioner</u>, T.C. Memo. 1988-160.

destruction of petitioners' residence as a disposition finds support in the involuntary conversion provisions of section 1033, which treat casualties in the same manner as condemnations, and in the provisions dealing with the limitation of the deduction for casualty losses under section 165(h), which specify that personal casualty gains in excess of losses shall be treated as gains from the sale of the property.

We also note that no part of the gain from such disposition of petitioners' residence appears on their 1992 return and indeed may never be includable in income if petitioners take advantage of the replacement provisions of section 1033, e.g., if petitioners die before disposing of the replacement home. See supra note 1. This being the case, the disallowance of the deduction of the legal fees herein is comparable to the situation involved in Towanda Textiles, Inc. v. United States, 149 Ct. Cl. 123, 180 F. Supp. 373 (1960), where legal expenses of collecting insurance proceeds on a building, destroyed by fire during a section 337 liquidation, were denied.

Petitioners rely heavily on Ticket Office Equipment Co. v. Commissioner, 20 T.C. 272 (1953), affd. per curiam 213 F.2d 318 (2d Cir. 1954). In that case, the taxpayer was allowed to deduct legal and adjusters' fees expended to collect insurance when the taxpayer's building was partially destroyed by fire. The building was used in the taxpayer's business, and the Court observed that the expenditures arose in the ordinary course of

that business.  Furthermore, a loss was involved, a point which the Court emphasized by observing that the expenses <u>reduced</u> the amount of the loss and consequently the deduction.  Indeed, the Court suggested that a gain might involve different treatment. See <u>Ticket Office Equipment Co. v. Commissioner,</u> 20 T.C. at 280 n.6.  Finally, it is not without significance that <u>Ticket Office Equipment</u> long antedated the articulation by the Supreme Court of the "origin of the claim" doctrine, see <u>supra</u> p. 5.  Thus, <u>Ticket Office Equipment</u> is clearly distinguishable, as is <u>United States v. Pate</u>, 254 F.2d 480 (10th Cir. 1958), which also involved business property.

We hold that the legal expenses represent capital expenditures nondeductible under section 263 and an offset against the gain represented by the insurance proceeds, none of which petitioners recognized in the taxable year before us.

<u>Decision will be entered</u>

<u>for respondent</u>.